WARNER, J.
Aarmada Protection Systems 2000, Inc., and Jeffery Dublé, Jr., timely appeal a final judgment entered on a jury verdict awarding the plaintiffs, Lance and Maureen Yandell, damages arising out of an automobile accident. Appellants present three claims of trial court error: (1) that the trial court erred in excluding evidence that the plaintiff’s medical treatment and costs were not reasonably or necessarily caused by the accident; (2) that the court erred in denying a directed verdict as to the medical costs incurred by plaintiff where his doctor referred him to the doctor’s own clinic for tests in violation of the Patient’s Self-Referral Act; and (3) that a new trial should have been ordered because of the cumulative effect of improper closing argument. We affirm, finding that (a) the claim regarding the exclusion of evidence has not been properly preserved; (b) the evidence does not support the claim that plaintiffs doctor violated the Patient’s Self-Referral Act; and (c) although some of the closing argument remarks of plaintiffs counsel were improper, many were not objected to, or where objections were made and sustained, no request for curative instruction was made nor mistrial requested. Appellants have not established that the remarks were harmful, nor have appellants established that they were incurable or that they impaired the public interest in the system of justice.
Lance Yandell sued Aarmada and its driver, Dublé, in April of 2008 for an auto accident which occurred in August 2007 when a vehicle owned by Aarmada and driven by Dublé rear-ended Yandell’s vehicle, forcing it into the back of another vehicle. Yandell began to notice pain in his neck and back within fifteen minutes of the accident. Paramedics transported him by ambulance to the hospital. In the emergency room, he was diagnosed with a neck sprain and lumbar spine strain. The emergency room doctor prescribed anti-inflammatory drugs and a muscle relaxer, and Yandell was released.
Within a few days of the accident, Yan-dell began seeking medical treatment with several doctors. He first went to see Dr. Wexler, an orthopedic surgeon. Dr. Wex-ler diagnosed a sprain/strain and recommended physical therapy.
Six days after the accident, Yandell began treating with a chiropractor, Dr. Philip Scuderi. Dr. Scuderi prescribed physical therapy, massages, and chiropractic care three times a week, and sent him for an *896 MRI in September 2007. According to Dr. Scuderi, Yandell’s MRI revealed disc herniation and bulging, which injuries Dr. Scuderi attributed to the August 2007 automobile accident. In March 2008, Dr. Scuderi determined that, from a chiropractic standpoint, Yandell had reached maximum medical improvement and had suffered a permanent injury. Dr. Scuderi, who had received a letter of protection from plaintiffs counsel, charged approximately $40,000 for his services.
In November 2007, while still treating with Dr. Scuderi, Yandell was referred to Dr. Theofilos, a spinal neurosurgeon.[1] Yandell presented with complaints of neck pain, back pain, tingling in the arms and feet, and pain radiating to his hip and buttock region. Dr. Theofilos noted that the patient had no previous low back or neck symptoms, and had never previously been treated for such. Dr. Theofilos reviewed Yandell’s September 2007 MRIs, concluding that Yandell had a broad-based disc herniation and an annular tear. Dr. Theofilos initially administered epidural injections, but they did not relieve Yandell’s pain.
Dr. Theofilos ordered additional MRIs, which confirmed his diagnosis after the first MRI scan. He performed a disco-gram to help pinpoint which discs were causing Yandell’s pain. Finding that Dr. Wexler’s conservative treatments had not done much for Yandell, Dr. Theofilos presented him with the options of living with the pain, having open surgery, or trying a less-invasive procedure. Yandell opted for a less-invasive procedure called an intrad-iscal decompression. Through the time of trial, Dr. Theofilo’s treatment of Yandell amounted to approximately $55,000.
At trial, Dr. Theofilos opined that Yan-dell’s injuries were caused by the August 2007 accident, not by the fact that he played football, because he had no history of prior back and neck pain before the accident. While acknowledging that Yan-dell had age-related degeneration in his discs, the doctor opined that degeneration was not the cause of the plaintiffs pain. He ascribed a 10% permanent impairment to Yandell’s lumbar spine, and a 7% permanent impairment to his cervical spine.
As to future treatment, Dr. Theofilos opined that Yandell would need fusion surgery at some point in the future, with surgical fees, anesthesia charges, and hospital fees bringing the total cost to between $100,000 and $120,000. This surgery — which Yandell testified that he planned to undergo — would not restore the plaintiff to his pre-accident condition, but would simply decrease his pain and nerve symptoms. Yandell would also need physical therapy, epidurals, and medications in the future.
Yandell testified at trial to the limitations he now experienced. Having been a professional football player in the Arena Football League, his main hobby was working out. Occasionally he would get a stiff neck but this would work itself out. After the accident, however, he explained that he can no longer go to the gym and that he is limited in his activities with his young children. His wife, who had a loss of consortium claim, also testified as to the limitations on his activities after the accident.
Before trial, the plaintiffs filed a motion in limine to preclude the defendants from presenting any argument or evidence that Yandell’s health care providers performed or recommended any inappropriate, im *897 proper, or unnecessary treatment. Attached to the motion in limine were reports authored by defense experts.
Dr. Jordan Grabel, a neurosurgeon, was expected to testify “regarding the reasonableness and necessity of the Plaintiffs medical care and the need for future medical care and treatment.” Dr. Grabel’s report stated, in pertinent part: 1) the plaintiffs cervical MRI pattern was consistent with longstanding changes rather than an acute trauma; 2) the accident of August 23, 2007, did not result in the need for any type of lumbar or cervical surgery, and such procedures would “in no way” be considered reasonable or related to the accident; 8) no specific additional treatments to the cervical spine or lumbar spine would be considered reasonable or related to the accident; 4) in the absence of any neurologic deficits, it was not possible to assign a permanent impairment rating; 5) the odds favored that the degenerative changes were “more related” to his professional football activity; and 6) there should be no restrictions on the plaintiffs physical activities.
Dr. Lawrence Gorfine, an anesthesiologist and pain management specialist, was listed as a witness who was “expected to testify with respect to Plaintiffs care, treatment and services rendered to the Plaintiff as well as the reasonableness, necessity, cost, causation, permanency, diagnosis and prognosis.” In Dr. Gorfine’s report, he stated: 1) the fees of Dr. Theo-filos were seven times the Medicare allowable charge, four times a local physician’s charge and two times the top 10% of charges in the United States for the same services; 2) there is no documentation of medical necessity for epidurals and epidu-rograms performed in conjunction with the percutaneous discectomy or the diseogram procedures; 3) the charges for medical services performed by Dr. Theofilos were excessive and above community and national standards.
The trial court held a hearing on the motion in limine. Following the hearing, the trial court entered an order granting the motion in limine, stating:
Defense doctors may not question the appropriateness, the need for or manner of any medical treatment of the Plaintiff. Causation is still an issue. Defendants’ experts may testify as to the reasonableness of any medical bills.
During trial, the defense presented redacted depositions of Drs. Grabel and Gorfine for the jury. Notwithstanding the motion in limine, the jury heard Dr. Grabel testify as to all of the points made in the report attached to the motion in limine. Likewise, Dr. Gorfine gave substantial testimony regarding the reasonableness of the charges for the plaintiffs treatment. He testified that Dr. Theofilos’ charges for the diseogram and surgery were not reasonable because they were excessive and not related to the accident, being substantially above local charges as well as the national averages. Moreover, Dr. Gorfine testified that the charges were not reasonable, because Yandell never evidenced symptoms necessitating the treatment Dr. Theofilos performed.
After a heated closing argument where both sides engaged in improper argument but no motions for mistrial were made, the jury returned a verdict awarding Yandell $107,812 for past medical expenses, and future medical expenses, reduced to present money value, of $65,000. The remainder of the award to Yandell consisted of pain and suffering damages and loss of earnings for a total award of $367,937 as well as an award for loss of consortium of $73,710, half of that requested in closing argument. The defendants filed a motion for new trial on the grounds of exclusion of evidence regarding the reasonableness and *898 necessity of the medical treatment by Dr. Theofilos as well as the improper closing argument. The trial court denied the motion and entered judgment, from which this appeal is taken.
In their first issue, appellants argue that they were improperly precluded from presenting testimony that the amount of damages the plaintiff was claiming was not reasonable or necessary for the sprain/strain injuries at issue. The standard of review of a trial court’s ruling on a motion in limine is abuse of discretion. Golden Yachts, Inc. v. Hall, 920 So.2d 777, 780 (Fla. 4th DCA 2006); Edwards v. State, 39 So.3d 447, 448 (Fla. 4th DCA 2010).
When the trial court excludes evidence, an offer of proof is generally necessary if the claimed evidentiary error is to be preserved for appellate review. Brantley v. Snapper Power Equip., Inc., 665 So.2d 241, 243 (Fla. 3d DCA 1995). Alternatively, if an adequate record of excluded evidence has been made at the hearing on the motion in limine, it is not necessary to make an offer of proof at trial. Id. Thus, one appellate court has stated that “absent a transcript of the hearing on the motion in limine, we must affirm a ruling that is not fundamentally erroneous on its face.” SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 526 (Fla. 2d DCA 2007). While there may be times when a transcript is not necessary, because the evidence sought to be excluded is otherwise in the record, it must be clear what specific evidence is being excluded by an order granting the motion.
In this case, there is no transcript of the hearing on the motion in limine in the record. Therefore, in determining what was excluded, we must look to the motion and the attached expert reports. As to those expert reports, we have reviewed the reports and compared them to the testimony of the two experts presented at trial. We can find no appreciable difference between the reports and the testimony. It appears to us that the defendants offered into evidence substantial testimony regarding both the necessity of treatment by Dr. Theofilos and the unreasonableness of its cost. Neither in the record nor in appellants’ brief is it revealed what specific testimony was excluded as a result of the motion in limine. Because of this, the issue has not been preserved, and we affirm.
In their second issue, the appellants claim that the trial court erred in denying their motion for directed verdict as to the charges made by Dr. Theofilos for MRIs performed at a facility he himself owned, as such a referral violated the Patient Self-Referral Act. The defendants maintain that section 456.052, Florida Statutes, prohibits physicians from making self-referrals to facilities in which they have a financial interest absent compliance with the statute’s disclosure requirements, which were not met here. It is unclear from this record, however, whether the statute was violated.
Section 456.052 states that “[a] health care provider shall not refer a patient to an entity in which such provider is an investor unless, prior to the referral, the provider furnishes the patient with a written disclosure form, informing the patient of’ the interest, the identity of the entity in which the provider has an interest, the patient’s rights to alternative services, and the identities of at least two alternative sources of the services. § 456.052(1), Fla. Stat. However, section 456.053(3)(o )3.f., Florida Statutes, contains an exemption for referrals:
f. By a health care provider who is the sole provider or member of a group practice for designated health services *899 or other health care items or services that are prescribed or provided solely for such referring health care provider’s or group practice’s own patients, and that are provided or performed by or under the direct supervision of such referring health care provider or group practice; provided, however, that effective July 1, 1999, a physician licensed pursuant to chapter 458, chapter 4.59, chapter 460, or chapter 461 may refer a patient to a sole provider or group practice for diagnostic imaging services, excluding radiation therapy services, for which the sole provider or group practice billed both the technical and, the professional fee for or on behalf of the patient, if the referring physician has no investment interest in the practice. The diagnostic imaging service referred to a group practice or sole provider must be a diagnostic imaging service normally provided, within the scope of practice to the patients of the group practice or sole provider. The group practice or sole provider may accept no m,ore than 15 percent of their patients receiving diagnostic imaging services from outside referrals, excluding radiation therapy services.
The italicized language was added by the legislature after the decision in Agency for Health Care Admin. v. Wingo, 697 So.2d 1231 (Fla. 1st DCA 1997), where the First District interpreted the “exemption” from the definition of “referral” narrowly, holding that a group practice forfeited the exemption of its provision of MRI services to its own patients from the definition of “referral” where the practice provided MRI services to patients referred by physicians outside the group practice. The amendment permits a limited amount of referral business without losing the exemption.
In this case, Dr. Theofilos testified that the MRI scans were performed in a suite adjoining his office with equipment leased from his o’ther corporation, North Palm Beach MRI Center. From our review of the testimony, it is unclear whether any outside physicians refer patients for MRI scans at this location. Nevertheless, even if he did accept some referrals, no evidence was produced that they did not meet the exception in the statute. Based upon this record, we cannot conclude that the trial court erred in denying the motion for directed verdict as to the cost of the MRIs, as it appears that the arrangement fell within the exemption provided in the statute.
Finally, appellants claim that the cumulative effect of the plaintiffs attorney’s closing argument constituted reversible error. The complained-of remarks fall into the following categories: 1) remarks which allegedly exploited the court’s ruling on the motion in limine; 2) remarks which alluded to the trial court’s denial of the directed verdict on the MRI charges; 3) improper comments regarding the financial disparity between the plaintiffs and the defendants; 4) improper “Golden Rule” arguments; 5) improper expressions of personal beliefs and experiences; and 6) improper personal attacks on the defendants, defense counsel, and defense witnesses.
 Although the appellants failed to object to most of the remarks and did not move for a mistrial as to any, they did move for a new trial based upon improper closing argument, thus preserving the issue for appellate review. See Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1027 (Fla.2000). Nevertheless, because of the lack of a motion for a mistrial on any of the objected-to remarks, we review even these remarks under the fundamental error analysis of Murphy, as they were not *900 properly preserved for review. See Companioni v. City of Tampa, 51 So.3d 452, 456 (Fla.2010).
Mwrphy teaches that to challenge closing argument comments the appellant must show: (1) that the comments were improper; (2) that the argument was harmful; (3) that the argument was incurable; and (4) that “the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.” Id. at 1028-30.
The court expounded on harmfulness by stating:
Harmfulness in this context also carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury. Passing remarks of little consequence in the scope of a lengthy trial should find little sympathy if no contemporaneous objection is voiced. The extensiveness of the objectionable material is a factor to be considered in the harmfulness analysis. In sum, the improper closing argument comments must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments.
Id. at 1029-30. To be incurable, “a complaining party must establish that even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unobjected-to argument resulted in an improper verdict.” Id. at 1030. The court noted that it will be extremely difficult for a party to meet this standard. Id.
Finally, the court also set the bar exceedingly high to establish that an argument, made without objection, damaged the trial to the extent that it interfered with the public’s interest in the justice system. It noted that only in very rare cases would an argument affect the public interest. It cited as an example of the type of argument that traditionally fits within this narrow category “argument that appeals to racial, ethnic, or religious prejudices”. Id.
The court also noted that the trial judge was in the best position to evaluate improper, unobjected-to errors. An appellate court reviews the trial court’s determination of a motion for new trial based upon improper argument under an abuse of discretion standard. Id. at 1030-31.
We will not detail at length the comments alleged to be improper. Not all of them were so, but we do find that plaintiffs’ counsel made an improper remark exploiting the ruling on the motion in li-mine; made one improper remark about the financial disparity between the parties, which was objected to and the objection was sustained; and made some personal attacks, which may have been improper, although some were in reply to defense counsel’s equally inflammatory argument about the veracity of Yandell’s treating health care professionals.
Nevertheless, we have reviewed the entire closing argument and cannot conclude that the trial court abused its discretion in denying the motion. As Murphy noted, the trial court is able to gauge the harmfulness of the remarks in the context of the entire trial far better than the appellate court. We defer to the trial court’s evaluation, as no abuse of discretion has been shown. Appellants also fail to show at all that the remarks were incurable. They posit that the improper arguments were pervasive and thus not curable, but part of the reason that they were pervasive is because most were not objected to, nor did *901 appellants seek curative instructions for any of the remarks. Clearly, many of the remarks could have been cured by a proper instruction from the court. Moreover, we do not find them as pervasive as appellants suggest, and as we noted before, many were actually fair reply to the argument of appellants. Finally, the public’s interest in the system of justice is not impaired by the argument in this case in the sense that Murphy requires. This simply does not fall into that very rare set of cases where the basic integrity of the judicial system is impacted by the argument.
For the foregoing reasons, we affirm the final judgment.
LEVINE and CONNER, JJ., concur.

. There seems to be some controversy as to who referred Yandell to Dr. Theofilos. Dr. Scuderi testified that he did, but other testimony shows that Yandell’s lawyer referred him to Dr. Theofilos.