# Third District Court of Appeal

## State of Florida

Opinion filed February 10, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1393
Lower Tribunal No. 13-33959
_____

**Florida Peninsula Insurance Company,**
Appellant,

vs.

**Rafael Nolasco and Celia Nolasco,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Quintairos, Prieto, Wood & Boyer, P.A., Thomas A. Valdez and Kimberly J. Lopater (Tampa), for appellant.

Alvarez, Feltman, Da Silva & Costa, PL, and Paul B. Feltman, for appellees.

Before GORDO, LOBREE and BOKOR, JJ.

PER CURIAM.

Florida Peninsula Insurance Company (FPIC) appeals the denial of its motion for new trial arguing the trial court abused its discretion by not ordering a new trial where counsel's repeated inflammatory remarks aimed at denigrating FPIC's counsel and expert witness constituted fundamental error, which devastated any chance FPIC had of receiving a fair trial.[1]  For the reasons that follow, we agree and reverse and remand for a new trial.

**FACTS AND PROCEDURAL HISTORY**

The Nolascos filed suit against FPIC in 2013 after suffering water damage to their home and making repairs.  FPIC defended against the claim based on expert testimony arguing the Nolascos staged the repairs and submitted a fraudulent claim.  Following a four-day trial, the jury returned a verdict in favor of the Nolascos awarding $20,000 in damages.

FPIC subsequently filed a motion for new trial arguing that plaintiffs' counsel committed reversible fundamental error in closing argument by calling FPIC's expert witness a "liar" and making inflammatory, prejudicial, and sexist comments about defense counsel.  Plaintiffs' counsel argued that because many of the improper comments were unobjected to, the error

---

[1] FPIC's motion for new trial alternatively sought to interview jurors.  FPIC alleged a juror was unqualified to sit on the jury and the trial court abused its discretion in denying the juror interview.  As this alternative basis for reversal is rendered moot by our decision, we decline to address it.

complained of was not preserved and a new trial was not warranted. The trial court denied the motion for new trial.

## STANDARD OF REVIEW

We "employ an abuse of discretion standard of review when considering the correctness of a trial court's grant or denial of a new trial based on unobjected-to closing argument." Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1031 (Fla. 2000). "[T]he primary concern of courts must be how the improper closing argument affected the fairness of the trial proceedings." Id. at 129; Carnival Corp. v. Jimenez, 112 So. 3d 513, 520 (Fla. 2d DCA 2013).

## LEGAL ANALYSIS

"A contemporaneous objection to improper comments during closing argument is necessary to preserve error, unless the error can be said to be fundamental." Owens Corning Fiberglas Corp. v. Morse, 653 So. 2d 409, 410 (Fla. 3d DCA 1995). "Fundamental error occurs if the argument 'was so prejudicial as to be incapable of cure by rebuke or retraction,' or if the error extinguishes 'a party's right to a fair trial.'" Id. (citations omitted).

We examine the trial court's ruling on the motion for new trial under Murphy's four-part test. "To receive a new trial . . . based on unobjected-to closing argument," "a complaining party [must] establish that the unobjected-

3

to argument being challenged was improper, harmful, and incurable," and "that the argument so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Murphy, 766 So. 2d at 1028–30.

### *Improper Remarks*

1. **Referring to defense counsel, Mr. Bosch and Ms. Jackson, as "liars"**

> MR. ALVAREZ: The next promise they broke is when Mr. Bosch walked up here and lied to you.
> . . .
>
> MR. ALVAREZ: The next thing that they did to lie to you, to break their promise to my client and then to you, Oh, it was a staged repair.
> . . .
>
> MR. ALVAREZ: No one came up here and said there was no water, no one came up here and said a loss occurred in another way. No one. It was nothing other than the argument of counsel, Mr. Bosch and Ms. Jackson making outlandish allegations, trying to get you to make leaps and inferences, but that's not evidence. Evidence is what you hear from that box, and the law is what the judge tells you it is. That's unfortunately the way the system goes. They can't come up here and lie to you and make misrepresentations like they did.
> . . .
>
> MR. ALVAREZ: For [Ms. Jackson] to come up here and say it is inconceivable that he said that, it is honestly just another lie by the defense team because they have no case.

4

## 2. **Referring to counsel, Ms. Jackson, and "her drama"**

MR. ALVAREZ: Everyone loves drama. That's what Ms. Jackson is all about, drama.

. . .

MR. ALVAREZ: They didn't put up a single witness. All they have is Ms. Jackson and her drama and her book.

. . .

MR. ALVAREZ: Now, she said some things that, again, back to drama.

. . .

MR. ALVAREZ: No, no, it is just Ms. Jackson and her drama.

. . .

MR. ALVAREZ: No one from the insurance company sat there and said it didn't happen, there was no water, it was fraud . . . . It is just Ms. Jackson and her drama and Mr. Bosch and his lies to you.

THE COURT: Mr. Alvarez, I ask you to be more polite to Ms. Jackson.

MR. ALVAREZ: I apologize, sir.

## 3. **Referring to expert witness, Donald Dunn, as a "liar"**

MR. ALVAREZ: [Mr. Dunn] went up there as a hired gun.

. . .

MR. ALVAREZ: Mr. Dunn bolstered himself and his testimony and broke his promise to you by not telling the truth, by not being 100 percent forthright with what happened. And that is the only basis that Ms. Jackson and Mr. Bosch and their client are using to

claim that my client committed some sort of fraud . . . . Mr. Dunn, the hired gun, the guy that works 90 percent of the time for insurance companies . . . .

. . .

MR. ALVAREZ: [Mr. Dunn] lied to me. Why? He is not up there as an expert. He's up as a hired gun by them to go back and accuse my client so they can deny his claim.

. . .

MR. ALVAREZ: I got out of him that 90 percent of his work is for the insurance companies. So obviously he skewed – he wants to keep making money. He kept smiling over at you guys, at the whole jury. I love to make money, kept shaking his head. Frankly, it is unrefuted that he is nothing more than a proxy for the insurance company.

### *Fundamental Error*

"[I]t is never acceptable for one attorney to effectively impugn the integrity or credibility of opposing counsel before the jury . . . ." Owens-Corning Fiberglas Corp. v. Crane, 683 So. 2d 552, 555 (Fla. 3d DCA 1996). "[D]erogatory comments specifically attacking the integrity of opposing counsel constitute fundamental error, depriving the plaintiffs of a fair trial." Morse, 653 So. 2d at 411. This Court has repeatedly held that arguments claiming opposing counsel "lied to the jury" or accusing counsel of "trickery" and "hiding the ball" are highly prejudicial and improper. Id.; Sun Supermarkets, Inc. v. Fields, 568 So. 2d 480, 481 (Fla. 3d DCA 1990) ("The conduct of the plaintiff's counsel in this case devastated any chance the

6

defendant might have had to secure a fair trial in front of a jury who had been told not to trust the defendant's counsel."); Kendall Skating Ctrs., Inc. v. Martin, 448 So. 2d 1137, 1137 (Fla. 3d DCA 1984) (finding plaintiff's assertion that defendants and their lawyers were "liars" compels reversal). Such comments are of a "nature and type that neither rebuke nor a retraction of the comments would 'destroy their prejudicial and sinister influence.'" Morse, 653 So. 2d at 411 (quoting Sun Supermarkets, 568 So. 2d at 481); E. Steamship Lines, Inc. v. Martial, 380 So. 2d 1070, 1072 (Fla. 3d DCA 1980).

While the blatant claims that defense counsel lied to the jury in and of themselves amount to fundamental error, here, the trial court observed that plaintiffs' counsel employed sexist[2] language in its strategy of denigrating the defense. The trial judge, who is in "the best position to evaluate improper, unobjected-to errors," specifically found plaintiffs' counsel's remarks offensive, sexist and unacceptable. Aarmada Prot. Sys. 2000, Inc. v. Yandell, 73 So. 3d 893, 900 (Fla. 4th DCA 2011). The repeated remarks

---

[2] We recognize that the term "drama" can be attributed to a person regardless of sex, but we accept the trial court's finding on the record that counsel's remarks were "sexist" given that the trial court is in a far better position than the appellate court to gauge the delivery, intonation and context of improper remarks in the first instance. See Aarmada Prot. Sys. 2000, Inc. v. Yandell, 73 So. 3d 893, 900 (Fla. 4th DCA 2011).

7

prompted the trial judge to interject and stop counsel from making further derogatory remarks consistent with the judge's "ultimate responsibility to ensure proper behavior of trial counsel and fair trial proceedings in his or her courtroom." R.J. Reynolds Tobacco Co. v. Calloway, 201 So. 3d 753, 763 (Fla. 4th DCA 2016). We do not find, however, that the judge's admonition cured the cumulative effect of the prejudicial statements.

We further find that plaintiffs' counsel's argument referring to the defense expert witness as a "liar" and a "hired gun" constituted fundamental error as counsel's remarks were not supported by record evidence. It is only permissible for counsel to refer to a witness as being a "liar" where "such characterizations are supported by the record." Murphy, 766 So. 2d at 1028; Craig v. State, 510 So. 2d 857, 865 (Fla. 1987) ("When counsel refers to a witness . . . as being a 'liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, [counsel] is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence."). A lawyer must not, however, state a personal opinion as to the credibility of a witness. R. Regulating Fla. Bar 4–3.4(e). "By doing so, an attorney removes himself from his position as an advocate and as an officer of the court and, in effect, becomes an additional witness for his client, not subject to cross examination."

8

Muhammad v. Toys R Us, Inc., 668 So. 2d 254, 258 (Fla. 1st DCA 1996).
"A lawyer's expression of his personal opinion as to the credibility of a witness, or of his personal knowledge of facts, is fundamentally improper." Id.; Moore v. Taylor Concrete & Supply Co., Inc., 553 So. 2d 787, 792 (Fla. 1st DCA 1989); Stokes v. Wet 'N Wild, Inc., 523 So. 2d 181, 182 (Fla. 5th DCA 1988). Closing arguments that "attempt to impugn the integrity of a witness by calling him a liar," "fall squarely within that category of fundamental error—requiring no preservation below—in which the basic right to a fair and legitimate trial has been fatally compromised." Kaas v. Atlas Chemical Co., 623 So. 2d 525, 526 (Fla. 3d DCA 1993).

## CONCLUSION

It is readily apparent that the focus of the closing argument was on denigration of defense counsel and the defense witness as opposed to attacking the evidence adduced at trial. Plaintiffs' counsel repeatedly denigrated the integrity and credibility of defense counsel and their witness by calling them "liars" and ridiculing Ms. Jackson for "her drama". "[T]hese inflammatory and prejudicial remarks will not be condoned." Morse, 653 So. 2d at 411. "We demean ourselves and the system of justice we serve when we permit this to occur." Borden, Inc. v. Young, 479 So. 2d 850, 851–52 (Fla. 3d DCA 1985).

9

We find the improper remarks in this case were "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury." Murphy, 766 So. 2d at 1029. "[T]he argument so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Id. at 1030. We, therefore, conclude the trial court abused its discretion in denying the motion for new trial.

Reversed and remanded for new trial.