795 So.2d 1025 (2001)
Ryan PLATZ, Jr., Appellant,
v.
AUTO RECYCLING AND REPAIR, INC., Barnett Towing, Inc. and Ronald Barnett, Sr., individually, Appellees.
No. 2D00-1390.
District Court of Appeal of Florida, Second District.
September 7, 2001.
Wayde P. Seidensticker, Jr. and Katy L. Koestner of Seidensticker & San Fillipo, LLP, Naples, and Kimberly L. Boldt of Boldt & Associates, P.A., Ft. Lauderdale, for Appellant.
*1026 Richard R. Garland of Dickinson & Gibbons, P.A., Sarasota, for Appellees.
NORTHCUTT, Judge.
Ryan Platz, Jr. received a favorable jury verdict in his dog bite suit against Ronald Barnett, Sr., Auto Recycling and Repair, Inc., and Barnett Towing, Inc. He challenges the trial court's order granting a new trial premised on misconduct by his attorney during the trial. After careful consideration, we reverse the new trial order and reinstate the verdict.
We preface our discussion with some remarks about the growing tension between Platz's counsel and the trial judge in the course of the three-day trial. It culminated in a new trial order which found that counsel was "argumentative, disrespectful, abusive to opposing counsel and to the Court and otherwise showed a genuine lack of respect for the Court's authority." Appellate counsel has gone to pains to analyze each of the mentioned episodes and to refute the allegations based on detailed references to the record. In some respects the record can be read to bear this out, but for the most part it is ambiguous.
Either way, however, the record is merely cold type, incapable of fully recounting the manner in which the recorded words were spoken. We must credit the trial judge's perceptions if for no reason other than his office and his presence at the trial. Beyond that, we know him to be an experienced jurist, and we note that in his order he tempered his criticism: "Counsel should be commended as a young, intelligent, zealous attorney. After review and reflection upon his conduct I am optimistic he can also proceed with the professionalism required to ensure that a fair trial is received by and presented to a jury in the future." We give credence to those perceptions, as well.
Turning to the merits, we must determine whether the trial court abused its discretion when ordering this case to be tried anew. Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000); Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla. 1999). In so doing, we are mindful that the new trial remedy is not a tool for punishing attorney misconduct. Rather, its focus is on the fairness of the proceedings. Murphy, 766 So.2d at 1029.
When ordering a new trial, the trial court must facilitate appellate review by specifying its reasons for concluding that the verdict was improper or that the jury was influenced by considerations outside the record. Brown, 749 So.2d at 497; Wackenhut Corp. v. Canty, 359 So.2d 430, 434 (Fla.1978). In this case, the new trial order identified six incidents of misconduct. The court characterized counsel's conduct as "inflammatory and prejudicial" and stated that it "precluded the jurors' rational consideration of the evidence and the merits of the case." However, three of the mentioned episodes took place outside the presence of the jury. They could not have influenced the jury's consideration of the case.
The other incidents concerned Platz's counsel making some loud comments at sidebar, thanking the court in a sardonic tone following a favorable ruling, and commenting during closing argument on part of a statute that was not included in the jury instructions. Only the last of these induced an objection, which was sustained. None of them drew a request for a curative instruction or a motion for mistrial. Therefore, none of these grounds for the new trial order was preserved. Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996), disapproved of on other grounds, Murphy, 766 So.2d at 1031.
We address the latter incident first. In Murphy our supreme court outlined the showing necessary to obtain a new trial in *1027 a civil case based on unpreserved error in closing argument. The party seeking the new trial must show that the argument was (1) improper, (2) harmful, (3) incurable, and (4) so damaging to the fairness of the trial that the public's interest in our system of justice requires a new trial. Murphy, 766 So.2d at 1030. If the trial court finds that all of these criteria have been met, it must enter an order granting a new trial specifically identifying both the improper arguments of counsel and the actions of the jury resulting from those arguments. Murphy, 766 So.2d at 1031; Hagan, 666 So.2d at 583.
Murphy emphasized that its four-part test is extraordinarily demanding. For example, in regard to the harmfulness requirement, the court observed that the improper closing argument "must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments." Murphy, 766 So.2d at 1030. Similarly with respect to the requirement that the harm must be incurable, the court wrote that the argument must be so harmful that "curative measures could not have eliminated the probability that the unobjected-to argument resulted in an improper verdict." Id. Not surprisingly, the court wrote that "it will be extremely difficult for a complaining party to establish that the unobjected-to argument is incurable." Finally, speaking to the public interest prong of the test, the Murphy court noted that the category of arguments that would satisfy it is narrow in scope. While not limiting the types of improper argument that might fit within the category, it gave as an example closing argument that appeals to racial, ethnic, or religious preferences. Id.
In this case the trial court did not have the benefit of Murphy, which was decided several months after the court issued its order granting a new trial. But the court's remarks set forth in the order demonstrate that the objectionable comment during closing argument did not meet the Murphy requirements. As mentioned, the court posited that counsel's conduct "precluded the jurors' rational consideration of the evidence and the merits of the case." Further, "I am unconvinced that the jury accepted the law as presented to it based upon Counsel's conduct." (Emphasis added.) Conversely, then, the remark during closing argument was not so harmful as to convince the court that the verdict could not have been obtained but for it, or so incurable that no measure could have eliminated the probability that it resulted in an improper verdict. See Cont'l Baking Co., Inc. v. Slack, 556 So.2d 754, 757 (Fla. 2d DCA 1990) (observing that granting a new trial on the mere suspicion of jury prejudice is insufficient as a matter of law). And, certainly, counsel's one reference to a portion of a statute that was not in the jury instructions did not sink to a level of perniciousness at which a new trial is required to maintain public confidence in our system of justice. For these reasons, the new trial order cannot stand insofar as it relied on improper closing argument. Murphy, 766 So.2d 1010; Wilbur v. Hightower, 778 So.2d 381 (Fla. 4th DCA 2001).
It is arguable whether the Murphy standard applies to the two remaining grounds listed in the new trial order. On the one hand, the conduct complained of was qualitatively akin to improper closing argument. On the other hand, although the Murphy court did not expressly limit its holding to closing argument, it discussed no other type of impropriety. If we were to apply the Murphy standard to these two bases for the new trial order, they would not suffice for the same reasons cited in regard to counsel's miscue during closing argument.
The trial court recited the test set forth in Tyus v. Apalachicola N. R.R. Co., 130 *1028 So.2d 580, 587 (Fla.1961), that being whether the prejudicial conduct was "so extensive that its influence pervade[d] the trial, gravely impairing a common dispassionate consideration of the evidence and the merits by the jury." Our review of the trial court's ruling in this regard is complicated by the fact that the court included in its assessment a number of incidents that took place outside the jury's presence. As we have stated, those episodes could not have affected the jury at all. Thus, we limit our focus to the two remaining grounds for the new trial orderthe loud comments at sidebar, and the inappropriate thank-youand we conclude that granting a new trial for those reasons would be an abuse of discretion.
Notably, the mentioned incidents not only were not preserved, they were not reflected in the record of the three-day trial. Our examination of the trial transcript failed to disclose a single sidebar conference at which the court or opposing counsel asked Platz's attorney to keep his voice down or otherwise commented on his volume. Likewise, when the court admonished counsel for thanking it after a favorable ruling, the court said nothing of counsel's tone, and counsel apologized. Obviously, then, neither factor was so extreme as to even merit a comment or notation for the record at the time, let alone an objection or rebuke. We conclude that no reasonable jurist would find their influence to be so extensive or pervasive as to warrant a new trial under the Tyus test.
Reversed and remanded with directions to reinstate the jury's verdict.
WHATLEY, A.C.J., and SILBERMAN, J., Concur.