901 So.2d 876 (2005)
USAA CASUALTY INSURANCE COMPANY, Appellant,
v.
Samuel W. HOWELL, III, Appellee.
Nos. 4D03-2517, 4D03-3819.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
*877 Betsy E. Gallagher and Dorothy C. Venable of Cole, Scott & Kissane, P.A., Tampa, and Mark M. Carroll of Law Offices of James G. Gilmour, Plantation, for appellant.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and Michael S. Smith of Slawson, Cunningham, Whalen & Smith, P.L., Palm Beach Gardens, for appellee.
GATES, MICHAEL, Associate Judge.
The facts of this case are not complicated. On September 13, 2000, appellee, Samuel W. Howell, III, drove his vehicle into an intersection and was struck by a truck driven by David Lyonnais; the truck was owned by a third party. Neither Lyonnais nor the owner of the truck had liability insurance.
Howell filed a complaint against his own insurance company, appellant, USAA Casualty Insurance Company, pursuant to the uninsured/underinsured motorist provisions of his policy.
A three-day trial was held in April 2003. Prior to voir dire, USAA presented the trial court with a motion in limine to prevent argument about claim handling procedures or the number of years the premiums had been paid. The trial court granted USAA's motion. USAA acknowledged in both voir dire as well as its opening statement that the evidence would show Lyonnais was negligent.
At trial Howell described his injuries and his pain as radiating in his lower extremities and occasional neck pain. Orthopedic spinal surgeon Dr. Emilio Musso testified that he treated Howell from 2000 to 2003 for neck pain and back pain which caused sciatica-radiating pain to Howell's legs. Two MRIs revealed a herniated disc in Howell's lower back and a small herniated disc in the middle of his neck. The doctor prescribed a course of anti-inflammatory medication, muscle relaxers, physical therapy, a cortisone injection, and pain medication. Dr. Musso opined that Howell suffered a permanent injury from the accident. Dr. Musso testified that a laminectomy for the herniated disc in Howell's lower back would cost approximately $33,000; that Howell would need medication in the future; and two six-week sessions of physical therapy per year at a cost of $1,500 each.
USAA's sole witness, orthopedic surgeon Dr. Donald Lamb, performed an independent medical examination of Howell on March 20, 2003. Dr. Lamb opined that Howell's condition was degenerative in nature. Dr. Lamb did not believe that Howell suffered a permanent injury from the accident.
*878 After the trial court instructed the jury, Howell's counsel made his closing argument. Among his comments were the following:
September 13 of 2000, Sam was a victim. Question: Will he be a victim on April 16th of 2003? That is a question only you can answer. USAA happily took his money, but when it comes to paying his claim, they are not so happy. Is that just? Is that fair? USAA won't pay Sam for the protection he already purchased. He already bought. He paid for it, paid in advance, and they won't pay him. They won't pay him.

....
You know, these guys at USAA have two badges. The guys that collect the premiums have a badge with a dollar sign. The guys that are supposed to be paying these claims, no money.
You know, with this war in Iraq, gentlemen, there are a lot of people who might need work over there. Maybe that minister of information can get a job at USAA. He is the guy that came on TV and said, the Americans are not at the airport and they show a split screen and you see them invading. The Americans are not in Iraq. Maybe that guy would do quite well at USAA.

....
It is a two way street between Sam and USAA. They had a contract. He lived up to his side of the contract. He paid them every single cent of premium, and do you think if he had missed one cent, don't you think they would have been there collecting it? It is a two way street though USAA. He paid for protection. It doesn't look like that's part of the bargain as they see it.

....
They are not accepting fault for this yo-yo. Drinking in the middle of the afternoon and running a red light.
A minister of information.
This Lyonnais is a poster child. They should put him in their ads. This is the reason in Florida you need to have this uninsured motorist for idiots like this guy. That's exactly why Sam Howell purchased it, paid for it; and, unfortunately, needed it, needed it for protection.
They don't seem to get that.
USAA says you should have looked, Mr. Howell. We took your premium, sir, but you should have looked. He did look. What was the evidence, gentlemen? The evidence was he said he glanced to his left. He didn't see anything. He is glancing to the right starting to pull out. Bam, it happens, immediately.
....
USAA is against paying what he [has] already bought and paid for. It is like you go to Burdines and you buy a shirt and you pay for it. He wants a shirt. He paid for this protection to protect him against idiots like Lyonnais.
USAA voiced no contemporaneous objections to any of Howell's counsel's comments. During closing argument Howell's counsel asked for a total damage award of $260,202. The jury returned a damage award of $300,000.
USAA moved for a new trial arguing that "[T]he plaintiff's inflammatory closing argument comparing the defense to the Iraqi Minister of Information, justifies a new trial. Moreover, [t]he repeated references to [M]r. Howell having paid a premium and now `the boys from USAA' don't want to pay violated the ruling on the defendant's motion in limine and prejudiced the defendant." None of the other arguments now complained of by USAA were presented in the motion for new trial. The motion was denied after a hearing.
*879 USAA contends that Howell's closing argument was so improper and prejudicial that a new trial is warranted. The Florida Supreme Court held in Murphy v. International Robotic Systems, Inc., 766 So.2d 1010, 1027 (Fla.2000), that a "civil litigant may not seek relief in an appellate court based on improper, but unobjected-to, closing argument, unless the litigant has at least challenged such argument in the trial court by way of a motion for new trial even if no objection was voiced during trial." This approach ensures that the trial judge, who is in the best position to determine the propriety and potential impact of allegedly improper closing argument, has an opportunity to make such a determination. The motion failed to mention the multitude of comments that USAA now attempts to raise on appeal but which were not properly preserved for review. For us to now consider for the first time as suggested by USAA arguments not set forth in the motion for new trial would be to disregard the reasoning and holding in Murphy. Therefore, only those arguments set forth in the motion for new trial shall be considered.
The Florida Supreme Court in Murphy set forth the standard to be applied by the trial court when considering unobjected-to argument upon a motion for new trial. The four prongs that the complaining party must establish to warrant a new trial are:

1. THE CHALLENGED ARGUMENT MUST BE IMPROPER
A proper argument helps the jury understand the issues by applying the evidence to the law of the instant case. Murphy, 766 So.2d at 1028. An improper argument bears the risk of inflaming the minds and passions of the jurors so that their verdict reflects an "emotional response ... rather than a logical analysis of the evidence in light of the applicable law." Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). Clearly, associating USAA with the Iraqi Minister of Information bears no relation to the evidence introduced during the trial. Further, some of the comments regarding USAA's insurance premiums and pay-out arguably violated aspects of the trial court's pre-trial order. See Leyva v. Samess, 732 So.2d 1118, 1121 (Fla. 4th DCA 1999) (finding that a violation of a pre-trial order could possibly lead to the granting of a new trial).

2. THE ARGUMENT MUST BE HARMFUL
Harmfulness turns on how the argument affected the validity of the trial proceedings. Murphy, 766 So.2d at 1029-30. If the comments were "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury," then the harmfulness requirement is satisfied. Id. There is no indication in this case that the comments met the harmfulness requirement. Howell sought damages in excess of $260,000 and the jury awarded $300,000. A jury may properly award damages equal to or in excess of those requested by counsel in closing argument. See Lopez v. Cohen, 406 So.2d 1253, 1256 (Fla. 4th DCA 1981). "In sum, the improper closing argument comments must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments." Murphy, 766 So.2d at 1030. In this case, the jury's slightly heightened award is not conclusive of a determination that counsel's comments were harmful.

3. THE ARGUMENT MUST BE INCURABLE
Had the comments been harmful, the third prong indicates that the argument must also be incurable. Id. As such, no *880 jury instruction or similar curative measure could eliminate the likelihood of an improper verdict based on the argument. Id. Here, a simple curative instruction that the jury was to only consider the evidence at trial and that counsel's statements were not evidence would have sufficed to purge the taint of the improper comments. Because USAA never objected to any comments, obviously such instruction was never given.

4. THE ARGUMENT MUST BE SUCH THAT IT SO DAMAGED THE FAIRNESS OF THE TRIAL THAT THE PUBLIC'S INTEREST IN OUR SYSTEM OF JUSTICE REQUIRES A NEW TRIAL
For this last requirement, it must be shown that "the argument so damaged the fairness of the trial that the public's interest in our justice system requires a new trial." Id. Examples include comments appealing to racial, ethnic, or religious prejudices. Id. The comments here do not rise to such a level. Although counsel's comment regarding Iraq could have sparked some ill feelings, when viewed in the context of the argument, the fairness of the trial was not damaged by it. Additionally, the insurance premiums comments violated, or came close to violating USAA's motion in limine, but they fell short of justifying a new trial.
A trial court's grant or denial of a motion for new trial is within its discretion. See Murphy, 766 So.2d 1010, 1030-31; All-state Ins. Co. v. Manasse, 707 So.2d 1110, 1111 (Fla.1998).
Because the improper comments in this case do not establish all of the Murphy factors, the trial court did not abuse its discretion by denying USAA's motion for new trial.
AFFIRMED.
SHAHOOD, J., concurs.
WARNER, J., concurs specially with opinion.
WARNER, J., concurring specially.
I agree with the majority's analysis, except for the conclusion that the argument was not harmful. In Murphy, the court said:
Harmfulness in this context also carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury. Passing remarks of little consequence in the scope of a lengthy trial should find little sympathy if no contemporaneous objection is voiced. The extensiveness of the objectionable material is a factor to be considered in the harmfulness analysis. In sum, the improper closing argument comments must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments.
766 So.2d at 1029-30. In this case, the award of damages in excess of what plaintiff's attorney asked for is evidence of the harmfulness of the pervasive improper argument. That the jury could award more than counsel requests does not answer the question of whether this verdict could have been obtained without such comments. I think the size of the verdict shows harmfulness.
Nevertheless, I agree that the argument could have easily been cured and its pervasiveness stopped if only defense counsel had objected to the first of the improper comments. Instead, plaintiff's counsel was allowed to make repeated improper references to the claims procedure and the premiums paid, as well as to the Iraq minister. These unobjected comments do *881 not constitute reversible error under Murphy, because they were not incurable.