WALLACE, Judge.
Cheryl Jimenez sued Carnival Corporation for damages that she sustained in a shipboard slip and fall incident. A jury *516 awarded Ms. Jimenez $3750 for past medical expenses and $3750 for past pain and suffering. The trial court set aside the verdict and awarded Ms. Jimenez a new trial based on misconduct and improper argument by Carnival’s attorney. Because any error stemming from defense counsel’s misconduct was both unpreserved and insufficient to meet the standard for fundamental error established in Murphy v. International Robotic Systems, Inc., 766 So.2d 1010, 1027-31 (Fla.2000), we reverse the order for new trial.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
On May 17, 2009, Ms. Jimenez was on a Carnival cruise ship to attend the wedding of her nephew.[1] As Ms. Jimenez was walking past a buffet, she slipped and fell in an oily substance. Immediately after her fall, Carnival personnel treated Ms. Jimenez in the ship’s infirmary for complaints of pain in her right knee and right hip. When Ms. Jimenez fell, the ship was still docked at the Port of Tampa; Ms. Jimenez was subsequently transported from the ship to Tampa General Hospital. At Tampa General, Ms. Jimenez was treated for contusions to her right hip and right knee and for a back strain.
During the next few weeks, Ms. Jimenez’s right-sided pain began to subside. However, on June 25, 2009, she consulted Dr. John Smith,[2] an orthopedic surgeon. On her first visit to Dr. Smith, Ms. Jimenez complained about pain in her left knee and in her neck and back. Ultimately, Dr. Smith performed two surgical procedures on Ms. Jimenez’s left knee. The second procedure, performed in October 2010, followed a separate gardening mishap. In the gardening incident, Ms. Jimenez experienced a sharp pain in her left knee while pushing a shepherd’s hook into the ground with her left foot.
Dr. Smith appeared at the trial as a witness for Ms. Jimenez. He testified that Ms. Jimenez’s shipboard slip and fall caused the problems with her left knee and necessitated the two surgical procedures. In response, Carnival contended that Ms. Jimenez’s problems with her right knee and hip had resolved within a few weeks after her fall. Carnival related Ms. Jimenez’s issues with her left knee to normal, degenerative changes in the joint and to the separate gardening incident.
During the relevant time, Ms. Jimenez did not have any medical insurance. Thus many of her medical providers — including Dr. Smith and the surgical center in which he had an interest — treated her under letters of protection.[3] Trial counsel for Car *517 nival (defense counsel)[4] made the existence of the letter of protection in favor of Dr. Smith a significant issue at the trial. Defense counsel mentioned the letter of protection during his opening statement and cross-examined both Ms. Jimenez and Dr. Smith about it. In addition, defense counsel elicited testimony from Dr. Smith that the doctor and Mr. Hendrik Uiter-wyk, a partner in the law firm representing Ms. Jimenez, were neighbors and that they saw each other socially.
Both parties raised the issue of the letter of protection during their closing arguments. In the initial portion of his closing argument, trial counsel for Ms. Jimenez (plaintiffs counsel), addressed the letter of protection at length. Although plaintiffs counsel’s remarks are too lengthy to quote in full, the following excerpt is sufficient to convey their tenor:
Every chance they got, Carnival and its lawyers put me and my client on trial with this letter of protection issue. Let’s look at it just quickly, and then we will move past it. Instead of taking responsibility for their actions, they wanted to continue to blame and attack.
We refused [sic] their contention that Dr. [Smith] had this significant financial interest. And he was the only doctor who was going to come in here that wasn’t a hired expert, wasn’t already on the payroll at that point. He was someone who actually treated Ms. Jimenez. He gave her the care that she needed over almost two years for those injuries, and he did it taking some risk, because he did it on this letter of protection. Does that make him somehow a bad doctor, that he’s going to come in here and not tell what the true case was? Absolutely not. Absolutely not.
Thus plaintiffs counsel attempted to minimize the impact of the letter of protection on Dr. Smith’s credibility by contrasting Dr. Smith’s role as Ms. Jimenez’s treating physician with Carnival’s reliance on “hired expert[s]”.
During defense counsel’s closing argument, he responded by emphasizing that Dr. Smith had a financial interest in the outcome of the case by virtue of the letter of protection. During a lengthy discussion of the letter of protection, defense counsel also offered his opinion that Dr. Smith had testified in accordance with a script. Defense counsel’s remarks about the claimed “scripted” testimony were as follows:
So let’s use our common sense and let’s connect the dots. Ms. Jimenez doesn’t know Dr. [Smith], [Ms. Jimenez’s primary care physician] did not refer Ms. Jimenez to Dr. [Smith]. You heard from Dr. [Smith], he and Hank Uiterwyk, [plaintiffs counsel’s] boss, are close social friends. So do I think there is a coincidence going on here? No. I think everything was absolutely scripted. Hank Uiterwyk and Dr. [Smith] are dear family friends. They live very close together. They are social friends.
(Emphasis added.) Dr. Smith did say on cross-examination that he had met with plaintiffs counsel before trial and reviewed with him the substance of his anticipated *518 testimony. However, defense counsel’s insinuation that Dr. Smith’s testimony had been “scripted” for him by plaintiffs counsel or by Mr. Uiterwyk is unsupported by any evidence in the record.
Although there were numerous references to the letter of protection during the trial, plaintiffs counsel made only two objections because of these references. The trial court sustained both of these objections. After the trial court sustained the objections, plaintiffs counsel did not either request a curative instruction or move for a mistrial. Notably, plaintiffs counsel made no objection at all to defense counsel’s “absolutely scripted” comment. Later, defense counsel made a personal attack on plaintiffs counsel. Acting quite properly on its own motion, the trial court admonished defense counsel that “personal attacks on opposing counsel are inappropriate” and- instructed the jury to disregard the remark. Plaintiffs counsel did not seek a mistrial on this occasion either.
The jury returned a verdict awarding Ms. Jimenez $8750 for past pain and suffering and $3750 for past medical expenses. Ms. Jimenez did not make any claim for lost wages or loss of earning capacity, and the jury did not award her anything for future pain and suffering or for future medical expenses. After the trial, the trial court entered a final judgment in favor of Ms. Jimenez and against Carnival in accordance with the jury’s verdict.
II. THE ORDER FOR NEW TRIAL
Ms. Jimenez timely filed a motion for a new trial. After a hearing, the trial court entered a lengthy and thoughtful order setting aside the final judgment and granting Ms. Jimenez a new trial. The trial court based its order for new trial on defense counsel’s questioning of witnesses and comments during closing argument relative to the letter of protection. In its order granting the new trial, the trial court explained its reasoning, in pertinent part, as follows:
[T]he comments made during closing arguments are perceived to have been prejudicial and highly inflammatory in nature because of their cumulative effect and their accusatory undertones. Defense counsel argued in closing, and argumentatively suggested during the questioning of witnesses, that Plaintiffs counsel, Mr. Uiterwyk, had collaborated or conspired with Dr. [Smith], to conjure a non-injury into this lawsuit. This all came in, in large part, as a result of this court allowing' evidence of Dr. [Smith’s] letter of protection (“LOP”) into evidence. When this trial court permits the introduction into evidence of a treating doctor’s LOP, it is to enable defense counsel to suggest that the doctor may have a financial bias, or stake in the outcome of the case. Not for the impermissible purpose of allowing Defendant’s attorney to suggest a “neighborly” conspiracy between the doctor and Plaintiffs attorney. This jury could not fairly assess the real issues of causation and damages when the specter of conspiracy was so boldly and repeatedly put out there by defense counsel.
[[Image here]]
If the Defendant’s attorney had stopped after making the[] point that Plaintiffs same-day physical complaints were different than those reported to Dr. [Smith] a few weeks after the claimed accident: that would have been perfectly fair game. But when Defendant’s counsel not only suggested a conspiracy, but then drove it home with his own personal belief, “J think everything was absolutely scripted,” he went over the line....
*519 It was fair comment to remind the jury that Ms. Jimenez didn’t seek treatment for her knee injury from her regular primary care physician, but chose to go to Dr. [Smith], However, pushing the argument beyond the bounds or propriety has, in this court’s opinion, allowed defense counsel to “snatch defeat from the jaws of victory.” The cumulative effect of these comments was prejudicial and highly inflammatory. First, Defendant’s counsel’s comments had a conspiratorial undertone interwoven with themes of scheming and falsification. The effect of this undertone was to deflect the jury’s attention away from the issue of defendant’s liability. Instead, by focusing on this alleged conspiracy between Dr. [Smith] and the Plaintiffs lawyers, in the manner that he did, defense counsel deflected the jurors’ attention away from the real issues. Second, Defendant’s counsel’s expression of his personal belief was likely impactful to the jury.
After the entry of the order for a new trial, Carnival timely filed this appeal.
III. DISCUSSION

A. Introduction

Generally, improper comments by counsel during closing argument may provide a ground on which a trial court may properly grant a motion for a new trial. Mercury Ins. Co. of Fla. v. Moreta, 957 So.2d 1242, 1250 (Fla. 2d DCA 2007) (citing Allison Transmission, Inc. v. J.R. Sailing, Inc., 926 So.2d 404, 407 (Fla. 2d DCA 2006)). Instances of attorney misconduct during trial may also warrant the grant of a new trial. Sullivan v. Kanarek, 79 So.3d 900, 906 (Fla. 2d DCA 2012); see, e.g., Irizarry v. Moore, 84 So.3d 1069, 1072 (Fla. 5th DCA 2012). “If the issue of an opponent’s improper argument [or conduct] has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was ‘so highly prejudicial and inflammatory that it denied the [objecting] party its right to a fair trial.’ ” Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1271 (Fla.2006) (quoting Tanner v. Beck, 907 So.2d 1190, 1196 (Fla. 3d DCA 2005)).
On the other hand, if the issue of an opponent’s improper argument or conduct has not been preserved by contemporaneous objection and motion for mistrial, a new trial will only be warranted when the improper behavior is “of such a nature as to reach into the validity of the trial itself to the extent that the verdict could not have been obtained but for such comments.” Id.; see also Murphy, 766 So.2d at 1029-30. In other words, if the error has not been properly preserved, a new trial is only warranted when the improper behavior amounts to fundamental error. Companioni v. City of Tampa, 51 So.3d 452, 456 (Fla.2010). Because of the inconsistency in this area of the law, the Florida Supreme Court in Murphy announced a four-part test to be applied in determining whether unobjected-to improper closing argument amounts to fundamental error requiring a new trial. To prevail on a motion for new trial under Murphy requires that the complaining party “establish that the [challenged] argument [or attorney misconduct] was (1) improper, (2) harmful, (3) incurable, and (4) so damaging to the fairness of the trial that the public’s interest in our system of justice requires a new trial.” Moreta, 957 So.2d at 1250 (citing Murphy, 766 So.2d at 1031); Companioni, 51 So.3d at 456. If the complaining party successfully establishes these four criteria, the trial court must grant the party’s motion for a new trial. Platz v. Auto Recycling & Repair, Inc., 795 So.2d 1025, 1027 (Fla. 2d DCA 2001).
*520 In reviewing a trial court’s order granting or denying a new trial based on unobjected-to closing argument, an appellate court must determine whether such order was an abuse of the trial court’s discretion. Murphy, 766 So.2d at 1030-31; Platz, 795 So.2d at 1026. “In so doing, [an appellate court must be] mindful that the new trial remedy is not a tool for punishing attorney misconduct. Rather, its focus is on the fairness of the proceedings.” Platz, 795 So.2d at 1026.
B. The Application of Murphy’s Four-Part Test
As we have already noted, plaintiffs counsel only made two objections relative to defense counsel’s references to the letter of protection. The trial court sustained both of these objections, and plaintiffs counsel did not request a curative instruction or move for a mistrial. Plaintiffs counsel did not make any other contemporaneous objections to defense counsel’s questions to witnesses or remarks in closing argument concerning the letter of protection. In particular, plaintiffs counsel did not object to defense counsel’s remark about “scripted” testimony that the trial court found “went over the line.” There was no motion for mistrial. However, Ms. Jimenez did serve a motion for new trial based on defense counsel’s handling of the letter of protection at trial. Therefore, we must determine if the trial court abused its discretion in granting Ms. Jimenez’s motion for new trial based on Murphy’s demanding four-part test.
1. The challenged conduct and argument must be improper
In applying Murphy’s four-part test, our first task is to determine whether defense counsel’s conduct and remarks were improper. The trial court got this part of the analysis right. Carnival could properly attack the credibility of Dr. Smith by showing that he was biased in favor of Ms. Jimenez. See § 90.608(2), Fla. Stat. (2011); Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co., 103 So.3d 200 (Fla. 4th DCA 2012). Undeniably, the existence of the letter of protection gave Dr. Smith a financial interest in the outcome of Ms. Jimenez’s personal injury action. Carnival could properly present evidence of that interest at trial and argue to the jury that Dr. Smith was more likely to testify favorably on behalf of Ms. Jimenez because of his financial interest in the case. See Allstate Ins. Co. v. Boecher, 733 So.2d 993, 997-98 (Fla.1999). Moreover, plaintiffs counsel first raised the issue of the letter of protection in the parties’ closing arguments. Defense counsel was certainly entitled to respond to the argument made by plaintiffs counsel that Dr. Smith’s status as Ms. Jimenez’s treating physician made him more credible than Carnival’s “hired expert[s].”
Nevertheless, as the trial court concluded, defense counsel’s insinuation that Ms. Jimenez’s law firm had taken advantage of Mr. Uiterwyk’s friendship with Dr. Smith to “script” the doctor’s trial testimony “went over the line.” These comments were highly improper and impermissible. See Venning v. Roe, 616 So.2d 604, 605 (Fla. 2d DCA 1993) (stating that defense counsel’s remarks accusing the plaintiffs medical expert of perjury and accusing opposing counsel of unethically committing a fraud on the court would not be condoned); Lewis v. State, 780 So.2d 125, 130 (Fla. 3d DCA 2001) (describing as the “most egregious” of several highly improper and impermissible comments made by a prosecutor as the one suggesting that defense counsel had “scripted” the defendant’s testimony); Hammond v. Mulligan, 667 So.2d 854, 855 (Fla. 5th DCA 1996) (Antoon, J., specially concurring) (stating that opposing counsel’s accusations in clos *521 ing argument of a conspiracy between the plaintiff and her physician to trick the jury and by plaintiffs counsel to “fool” the jury by hiding relevant evidence from them amounted to fundamental, reversible error); Owens Corning Fiberglas Corp. v. Morse, 653 So.2d 409, 411 (Fla. 3d DCA 1995) (holding that defense counsel’s comments that one of the plaintiffs’ trial attorneys had “prodded” one of the plaintiffs into giving answers and that the plaintiffs responses “had to have been told by his attorneys” were improper). Defense counsel could properly argue that Dr. Smith’s credibility was subject to question because of his financial interest in the case, but defense counsel was not free to opine — in the absence of any evidence — that someone in Ms. Jimenez’s law firm had “scripted” the doctor’s testimony. See Lewis, 780 So.2d at 130.
2. The challenged conduct and argument must be harmful
Under Murphy’s second prong, the complaining party must establish not only that the challenged conduct and argument were improper but also that such conduct or remarks were harmful. Murphy, 766 So.2d at 1029-30. In this context, harmfulness “carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury.” Id. at 1029. The standard for establishing harmfulness is an exacting one. “[T]he improper closing argument comments must be of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments.” Id. at 1030; see, e.g., Platz, 795 So.2d at 1027. In other words, “[hjarmfulness turns on how the argument affected the validity of the trial proceedings.” USAA Cas. Ins. Co. v. Howell, 901 So.2d 876, 879 (Fla. 4th DCA 2005).
In the order for new trial, the trial court found that defense counsel’s comments were “prejudicial and highly inflammatory.” As noted above, we agree that to the extent that defense counsel’s comments crossed the line from reminding the jury of Dr. Smith’s bias to insinuations of unethical behavior and fraud, the comments were highly improper and inappropriate.
Nevertheless, the trial court’s explanation of how the comments affected the verdict is not persuasive. The jury found Carnival liable for Ms. Jimenez’s slip and fall; it did not attribute any comparative negligence to her. The problems for Ms. Jimenez at trial were not liability but causation and the extent of her damages. She sought an award substantially higher than the jury’s $7500 verdict. Undeniably, Ms. Jimenez had been injured in her slip and fall on the ship. She was treated in the ship’s infirmary immediately after the incident and was transported directly from the ship to Tampa General for further treatment. However, the evidence at trial suggested that the right-sided pain experienced by Ms. Jimenez immediately after her slip and fall resolved itself within a few weeks after the incident. In addition, there was ample evidence from which the jury could have concluded that the other conditions for which Dr. Smith treated Ms. Jimenez were attributable to normal degenerative changes, the separate gardening incident, or both. If the jury took this view of the evidence, then the jury’s verdict seems modest but not outside the range of possible verdicts one might expect under these circumstances. Because there was ample evidence in the record from which the jury might have reached the verdict complained of, Ms. Jimenez has failed to establish that defense counsel’s conduct and comments were harmful un *522 der the Murphy standard. See Thompson v. Hodson, 825 So.2d 941, 947 (Fla. 1st DCA 2002).
3. The challenged conduct and argument must be incurable
Murphy’s third prong requires that the complaining party “establish that even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unobjected-to argument resulted in an improper verdict.” Murphy, 766 So.2d at 1030. This standard is just as demanding as the standard for establishing harmfulness; thus rarely will a party be able to satisfy the burden of this prong. Id.; see, e.g., Aarmada Prot. Sys. 2000, Inc. v. Yandell, 73 So.3d 893, 900 (Fla. 4th DCA 2011).
We agree that an unsubstantiated accusation that a lawyer conspired with a witness to present “scripted” testimony and to thereby perpetrate a fraud on the court is highly improper and should not be condoned. See Venning, 616 So.2d at 605; Lewis, 780 So.2d at 130. However, most of defense counsel’s questioning of witnesses and remarks about the letter of protection focused on the financial interest the document gave Dr. Smith in the outcome of the case. In the context of the trial as a whole, the suggestion of a conspiracy and the reference to “scripted” testimony was a relatively isolated event. Ms. Jimenez fails to explain why a prompt objection and request for a curative instruction would have been insufficient to cure the effect of defense counsel’s unsubstantiated accusation. We also note that the trial court not only sustained other objections made by plaintiffs counsel concerning references to the letter of protection but also acted on its own motion to admonish defense counsel for an improper attack on plaintiffs counsel and instructed the jury to disregard the remark. Undoubtedly, the trial court strongly disapproved of defense counsel’s “absolutely scripted” comment. If plaintiffs counsel had timely objected to the remarks, it seems very likely that the trial court would have sustained the objection, admonished defense counsel in the strongest terms, and instructed the jury to disregard defense counsel’s improper comments. Under the circumstances, Ms. Jimenez has not met her high burden of establishing that the remarks in question were incurable. See Thompson, 825 So.2d at 947.
4. Consideration of the public’s interest in our system of justice
Last, Murphy’s fourth prong requires “that the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.” Murphy, 766 So.2d at 1030. Nevertheless, if the complaining party fails to establish that the argument being challenged is improper, harmful, and incurable, then the analysis does not proceed to the last prong of this four-part test. Moreta, 957 So.2d at 1254 (citing Murphy, 766 So.2d at 1030); City of Orlando v. Pineiro, 66 So.3d 1064, 1072 (Fla. 5th DCA 2011). Because Ms. Jimenez has not established that the challenged conduct and argument of defense counsel were both harmful and incurable, we need not consider the fourth prong of the Murphy test.
IV. CONCLUSION
For the foregoing reasons, we reverse the circuit court’s order for new trial and remand this case for reinstatement of the final judgment.
Reversed and remanded.
LaROSE and BLACK, JJ., Concur.

.We note that the transcript of the trial proceedings included in the record is limited to excerpts of the trial. The excerpts included in the record consist of the parties’ opening statements, the testimony of Ms. Jimenez, the testimony of her treating physician, and the parties’ closing arguments. In an appeal of an order for new trial based on alleged misconduct and improper argument of counsel, we would generally expect to have a complete trial transcript included in the record. However, in this case, Carnival designated only excerpts of the trial proceedings, and Ms. Jimenez did not designate any additional portions as authorized under Florida Rule of Appellate Procedure 9.200(b)(1). Moreover, Ms. Jimenez did not take any other steps to have the complete trial transcript included in the record. In her brief and at oral argument, Ms. Jimenez did not contend that the limited record is insufficient for appellate review. Because it appears that the limited record is sufficient for our consideration of the issues presented, we have reviewed the case on the merits. See Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908, 911 (Fla.1985).

. "John Smith” is not the doctor's real name. We use a pseudonym in this opinion to protect his privacy.

. "A letter of protection is a document sent by an attorney on a client's behalf to a healthcare provider when the client needs medical *517 treatment, but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider’s bill from the proceeds of [a] settlement or award; and typically, if the client does not obtain a favorable recovery, the client is still liable to pay the provider’s bills.” Caroline C. Pace, Tort Recovery for Medicare Beneficiaries: Procedures, Pitfalls and Potential Values, 49 Hous. Law. 24, 27 (2012).

. Scott A. Cole and Anne C. Sullivan, the attorneys who filed the brief on behalf of Carnival in this court, did not make appearances at the trial of the case.