# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4469
_____

MARION LITTLE,

    Appellant,

    v.

JOANN DAVIS,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

December 14, 2018


ROWE, J.

Joann Davis was stopped at a stop sign when the vehicle she was driving was rear-ended by a car driven by Marion Little. Both parties agreed that Little's car was traveling less than five miles per hour before it made contact with the bumper of Davis's car. Initially, Davis did not complain of any injuries. But nine days after the accident, Davis asserted that she had pain in her left arm. Eight months later, she filed suit alleging that she sustained permanent injuries in the accident. The case proceeded to trial, and the jury returned a verdict in favor of Davis, but found that she did not sustain any permanent injury. The jury awarded no damages for pain and suffering. Davis moved for a new trial on grounds that a single question posed by defense counsel to Davis under cross-examination was so prejudicial it warranted a new

trial.  The trial court granted the motion.  Because the record does not support the trial court's ruling, we reverse.

*Facts*

Liability was not at issue in this case.  Little admitted that she caused the accident, but she disputed that Davis sustained permanent injury during the low-speed collision. Further, the parties argued over whether any of the injuries Davis alleged were caused by the accident or were instead related to a pre-existing condition.  Evidence of causation was in conflict.

On the one hand, Davis presented the testimony of two physicians, including a neurological surgeon who opined that the injuries to Davis's left arm were caused by the accident.

On the other hand, Little presented the testimony of a biomechanics engineer, who testified that the mechanics of the collision made it "physically impossible" for Davis to develop the injuries she alleged as a result of the accident.  Further, a doctor who performed a comprehensive medical examination of Davis testified that Davis's pain complaints could not be explained on any kind of anatomic basis.  He also opined that she exhibited conduct consistent with malingering.  During defense counsel's cross-examination of Davis, the jury heard evidence regarding Davis's twenty years' worth of medical records related to Davis's prior complaints and car accidents.  Davis testified that she could not recall the prior accidents or complaints and that she had never specifically complained of pain in her left arm.  Defense counsel then inquired:

> DEFENSE:    Okay. Isn't it true that as of today, you no longer have any problems with your left arm?
>
> DAVIS:    I still have problems with my left arm.
>
> DEFENSE:    You still do?
>
> DAVIS:    Yes.

2

DEFENSE: You've lived with your boyfriend, William McNealy for several years; isn't that right?

DAVIS: Yeah. Three years.

DEFENSE: Three years? Okay. He lived with you at the time of this accident?

DAVIS: Yes.

DEFENSE: Okay. If your arm's still injured, how come Mr. Nealy testified that you don't complain to him about problems with your left arm anymore?

PLAINTIFF: Objection; speculation.

DAVIS: (Inaudible).

COURT: Hang on just a second. What's the objection?

PLAINTIFF: The objection is speculation. She's asking why does he think something.

COURT: Restate the question.

DEFENSE: I said if you were – if your left arm is still injured, how come Mr. Nealy testified that you don't complain to him about problems with your arm anymore?

DAVIS: Because I –

COURT: Hang on just a second. What's the objection?

3

PLAINTIFF:    The objection is it's hearsay and it requires her to speculate on the state of mind of another witness that's not even in evidence.

COURT:    Sustained.

DEFENSE:    Mr. Nealy wouldn't make anything up about you, would he?

PLAINTIFF:    Objection.

COURT:    Sustained.

DEFENSE:    Isn't it true, Ms. Davis, that the problems you're having now are simply the same ones you've had for 20 years?

DEFENSE:    No.

The jury returned a verdict in favor of Davis, finding that Little caused the accident. The jurors further found that Davis sustained an injury in the low-speed collision and awarded Davis damages in the amount of her past medical bills. However, the jury found that Davis did not sustain a permanent injury "within a reasonable degree of medical probability." Finding no permanent injury, the jury did not award Davis any damages for past or future pain and suffering.

Davis moved for a new trial on damages. She argued that the jury's verdict finding no permanency was contrary to the manifest weight of the evidence presented at trial. At the hearing on the motion, Davis asserted that the jury was misled by defense counsel's cross-examination questions regarding her boyfriend William McNealy and misperceived the weight of the evidence. She argued that defense counsel's conduct was so prejudicial and incurable that it warranted a new trial. The court expressed its dissatisfaction in defense counsel for inquiring about Davis's boyfriend. The court explained on the record the reasons it found defense counsel's line of questioning to be prejudicial:

4

COURT: Let me just – you know, I, under the circumstances, did find that to be highly prejudicial and I am going to grant a new trial on damages based on that.

And just for the purpose of the appellate court, if that's taken up, wondering why I'm making that, my observations of Ms. Davis was that she frankly was a very uncommunicative witness. Not that she was the least bit hostile, it's just that she had a lot of difficulty expressing herself both on direct and cross examination, such that on direct examination, my recollection is [Davis's counsel] really struggled to get her to testify to the basics on direct examination, just because she was so unable to express herself verbally. Whether it was shyness or whatever, she was unable to do that.

On cross examination, that caused on cross, I believe, the jury to believe that whatever she was asked on cross was the truth, because I don't think she disagreed with anything you said on cross, to the best of my recollection.

DEFENSE: I didn't ask any questions that she could have disagreed with.

COURT: Well, I mean, there were a lot of just grunts, as I recall, not even – but I really – that bothered me when I heard it, because I

5

remember thinking this jury, it would be easy for them to believe that the boyfriend – that she must have told the boyfriend that she's not hurt.

I am going to grant the new trial on damages because of that and I just wanted to make sure the appellate court understood that. I know my job in part as a judge is to, based upon my experience as both a trial lawyer and a judge and my observations of witnesses and their demeanor and all of those things that go with a trial, that while I have to be very reluctant to substitute my judgment for the jury's in the long run, I do have to make sure the jury is not misled on the testimony. And with this being really a dispute between Dr. Rumana, who was her long time treating physician, and Dr. Rogozinski, who saw her for about 30 minutes, that I think that question itself, although it wasn't answered, it was objected to and the objection was sustained, caused that to be a big part in the jury making their determination as to the permanency, so I'm going to grant the new trial based on that.

. . .

DEFENSE: **So just to be clear for the appellate record, you are granting a new trial solely on**

6

|  | **the issue of the one hearsay question?** |
|---|---|
| COURT: | **A highly prejudicial hearsay question.** |

The written order granting a new trial indicated that the trial court's ruling was "based upon the introduction of certain hearsay evidence during the cross-examination of [Davis], which the Court [found] was unduly prejudicial to the [Davis] and deprived her of a fair trial." This appeal follows.

## *Analysis*

We "begin with the presumption that the trial court properly exercised its discretion, and [] will not disturb the trial court's ruling absent a clear abuse of that discretion." *Allstate Ins. Co. v. Manasse*, 707 So. 2d 1110, 1111 (Fla. 1998). The trial court's "decision to grant a new trial is given even greater deference than a court's decision to deny a new trial." *Sullivan v. Kanarek*, 79 So. 3d 900, 903 (Fla. 2d DCA 2012). This is because the trial court "had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record." *Johns-Manville Sales Corp. v. Janssens*, 463 So. 2d 242 (Fla. 1st DCA 1984). But, despite this deference to the trial court, the order granting a new trial must be supported by the record. *Moore v. Gillett*, 96 So. 3d 933, 938 (Fla. 2d DCA 2012). Here, the record does not support the trial court's order.

The parties agree that the alleged error in this case was not properly preserved. "[W]hen a party objects to instances of attorney misconduct during trial, and the objection is sustained, the party must also timely move for a mistrial in order to preserve the issue for a trial court's review of a motion for a new trial." *Companioni v. City of Tampa*, 51 So. 3d 452, 456 (Fla. 2010). Here, although Davis's counsel objected to defense counsel's question regarding McNealy, and the trial court sustained it, Davis's counsel never sought a curative instruction and did not move for mistrial. Thus, our review is for fundamental error. *Id.* at 454 (citing *Ed Ricke & Sons, Inc. v. Green*, 468 So. 2d 908, 910 (Fla. 1985)).

In *Murphy v. International Robotic Sys., Inc.*, 766 So. 2d 1010 (Fla. 2000), the Florida Supreme Court set forth a four-part test that trial courts must apply when determining whether a new trial should be granted based on unpreserved error in closing argument. *Id.* To prevail on a motion for new trial under *Murphy*, the movant must establish that the challenged argument was (1) improper, (2) harmful, (3) incurable, and (4) so damaging to the fairness of the trial that the public's interest in our system of justice requires a new trial. *Id.* at 1028-30. The test outlined in *Murphy* is not limited to a trial court's review of unpreserved errors made during closing argument. The Florida Supreme Court has since held that the *Murphy* test also applies to a trial court's review of unpreserved errors related to "instances of attorney misconduct." *Companioni*, 51 So. 3d at 456; *see also Carnival Corp. v. Jimenez*, 112 So. 3d 513, 519 (Fla. 2d DCA 2013) (applying *Murphy* test to review defense counsel's misconduct throughout trial); *Platz v. Auto Recycling & Repair, Inc.*, 795 So. 2d 1025, 1027 (Fla. 2d DCA 2001) (recognizing that the *Murphy* court "did not expressly limit its holding to closing argument"). A trial court abuses its discretion when it grants a new trial based on an unpreserved error involving attorney misconduct without first applying the four-part test outlined in *Murphy*. *See Black v. Cohen*, 246 So. 3d 379, 385 (Fla. 4th DCA 2018).

Here, the trial court did not make the four findings required by *Murphy* and failed to address each requirement at the hearing or in its written order. On this basis alone, the trial court abused its discretion. *See McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007) (holding that a trial court "abuses its discretion if its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence") (internal quotes omitted); *see also Companioni*, 51 So. 3d at 456 (holding that trial court may not grant a new trial based on objections to attorney misconduct which were sustained, but for which no motion for mistrial was requested, without the requirements of *Murphy* being met); *Carnival Corp.*, 112 So. 3d at 520 (noting that complaining party must successfully establish the four criteria outlined in *Murphy* before the trial court can grant the party's motion for new trial); *Mercury Ins. Co. of Florida v. Moreta*, 957 So. 2d 1242, 1250 (Fla. 2d DCA 2007) (same); *Sawczak v. Goldenberg*, 781 So. 2d 450, 451 (Fla. 4th DCA 2001) (same).

Further, our review of the record establishes that in this case, the four requirements of the *Murphy* test cannot be met.

### 1. Improper conduct

With regard to the first prong of the *Murphy* test, the question posed by defense counsel during the cross-examination of Davis—"If your left arm is still injured, how come Mr. Nealy testified that you don't complain to him about problems with your arm anymore?"—was improper[1] because it misrepresented the evidence and introduced hearsay testimony from a non-testifying witness. *See generally Boyles v. Dillard's Inc.*, 199 So. 3d 315, 319 (Fla. 1st DCA 2016) (finding improper defense counsel's attempted impeachment of plaintiff's credibility by referring to a deposition that had not previously been introduced into evidence); *Moreta*, 957 So. 2d at 1252 (finding improper defense counsel's closing argument revealing opinion of non-testifying witness).

### 2. Harmfulness

The second prong under *Murphy* requires the trial court to determine whether defense counsel's question was harmful. Harmful comments are those that are "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury," such that "the verdict reached could not have been obtained but for such comments." *Id.* Defense counsel's question, asked on the first day of a three-day trial, was isolated and unanswered. McNealy was never called as a witness, and his name was never mentioned again. "No reasonable person would conclude that the verdict was fatally tainted by this single remark." *Black*, 246 So. 3d at 385.

Even clearly improper questioning is not harmful under *Murphy* if the record contains "ample evidence" to support the jury's verdict. *See Thompson v. Hodson*, 825 So. 2d 941, 947 (Fla. 1st DCA 2001) (finding defense counsel's false implication that his client was the only one of plaintiff's doctors being sued was not

---

[1] At oral argument, Little's appellate counsel conceded that the question was improper.

harmful where the record contained "ample evidence from which a jury could have fairly rendered a defense verdict"); *see also Carnival Corp.*, 112 So. 3d at 521-22. Here, there was ample evidence to support the jury's finding that Davis did not sustain any permanent injury during the low-speed collision. Indeed, Davis's medical records reflected an extensive history of left-arm pain and numbness over a twenty-year period. Further, the jury heard testimony that it was "physically impossible" for Davis to have developed her claimed injuries during the accident. The physician who examined Davis opined that Davis's conduct during her examination was consistent with malingering. A finding that Davis sustained no permanent injury is also consistent with the neurological surgeon's testimony that Davis's surgeries were successful and improved her condition and that Davis would continue to see improvement for up to two years after the surgery. Thus, there was ample evidence to support the jury's verdict that Davis was not entitled to damages for pain and suffering and that Davis did not suffer any permanent injury. Accordingly, on this record, we find that defense counsel's conduct was not harmful under *Murphy*.

## 3. Incurability

The third prong outlined in *Murphy* requires the trial court to determine "that even if [it] had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unobjected-argument resulted in an improper verdict." *Murphy*, 766 So. 2d at 1030. This is an "extremely difficult" hurdle, and "rarely will a party be able to satisfy the burden of this prong." *Carnival Corp.*, 112 So. 3d at 522. Davis cannot establish that the harm caused by defense counsel's question, if any, was incurable. Davis's counsel did not request a curative instruction[2] and, even if he had, Davis fails to

---

[2] At the hearing on Davis's motion for new trial, the trial court was laboring under the impression that it had in fact given a curative instruction. When the court erroneously recalled that it had given a curative instruction, Davis's counsel compounded the error, agreeing that a curative instruction had been given.

explain why a general instruction to disregard the objectionable statement would have been ineffective. *See id.* (noting that an appellant must explain why an instruction to disregard would not cure improper comments). On this record, there is no reason to believe that a curative instruction would not have remedied any potential harm caused by defense counsel's unanswered question.

### 4. Consideration of the public's interest in the justice system

Finally, the fourth prong requires the moving party to establish that the attorney's misconduct "so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." *Murphy*, 766 So. 2d at 1030. The category of attorney misconduct that would satisfy this prong is very limited. The court in *Murphy* provided that conduct appealing to racial, ethnic, or religious preferences would traditionally meet this requirement. *Id.* Here, the single, isolated question by defense counsel made on the first day of a three-day trial "did not sink to a level of perniciousness at which a new trial is required to maintain public confidence in our system of justice." *Platz*, 795 So. 2d at 1027. The trial court failed to consider this prong before granting a new trial, Davis offered no argument to support it, and our review of the record demonstrates defense counsel's conduct in asking the single, isolated cross-examination question did not amount to an error that seriously affects the basic fairness, integrity, or public reputation of the judicial process.

### *Conclusion*

Because the trial court failed to apply the four-part test outlined in *Murphy* in ruling on Davis's motion for new trial, and because the *Murphy* test cannot be met on this record, the trial court abused its discretion. Accordingly, we reverse the order granting new trial and direct the lower court to enter a judgment consistent with the jury's verdict. *See Walt Disney Parks & Resorts U.S., Inc., v. Grimes*, 248 So. 3d 179, 180 (Fla. 5th DCA 2018).

REVERSED and REMANDED with directions.

LEWIS, J., concurs; WOLF, J., concurs in result.

11

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Rhonda B. Boggess and Amanda L. Ingersoll of Taylor, Day, Grimm & Boyd, Jacksonville, for Appellant.

James G. Biggart, II, of Morgan & Morgan, Tallahassee, for Appellee.