632 So.2d 159 (1994)
Mary Jo DUNGAN and Allen J. Dungan, Appellants,
v.
Travis Griffin FORD and Miller Transporters, Inc., Appellees.
No. 92-564.
District Court of Appeal of Florida, First District.
February 11, 1994.
Rehearing Denied March 17, 1994.
*160 James F. McKenzie, McKenzie & Soloway, P.A., Pensacola, for appellants.
James A. Edwards, Roth, Edwards & Smith, P.A., Orlando, for appellees.
SMITH, Judge.
Mary Jo and Allen Dungan, plaintiffs below, appeal from an adverse judgment rendered against them following a jury verdict denying recovery in their negligence action for damages incurred in an automobile accident. We agree that reversible error occurred in the admission of evidence and in denial of a special jury instruction requested by appellants. Accordingly, we reverse and remand for a new trial.
On April 26, 1986, Mary Jo and Allen Dungan, their daughter Crystal, a family friend, and Allen's mother, Dartha Dungan, were riding in a van along a highway in Milton, Florida. Mary Jo was driving when the van was struck from the side by a semitractor trailer owned by appellee Miller Transporters, Inc., which was then being driven by appellee, Travis Ford. Crystal and Dartha Dungan were taken for medical treatment for their injuries immediately following the accident. Mary Jo required no immediate medical treatment; however, she later developed pain and disabilities which she attributed to the accident, and received extensive medical treatment, including surgery.
Appellants filed their complaint seeking damages for injuries, disability and disfigurement suffered by Mary Jo, and for medical expenses and loss of income. Appellant Allen Dungan sought damages for loss of consortium. Dartha Dungan, Allen's mother, joined as a plaintiff in the complaint, seeking damages for her personal injuries and medical expenses. At trial, the jury returned a verdict of $75,000 in favor of Dartha Dungan, but denied recovery to Mary Jo and Allen Dungan based upon the jury's finding that there was no negligence on the part of the defendants which was a legal cause of damage to Mary Jo and Allen. Mary Jo and Allen moved for a new trial, arguing that the jury's verdict with respect to them was against the manifest weight of the evidence; that the jury verdict was inconsistent with the verdict in favor of Dartha Dungan, and that the verdict was the result of the trial court's error in admitting testimony regarding the inappropriate medical treatment received by Mary Jo Dungan. In their motion for a new trial, appellants also pointed out that negligence on the part of the defendant driver, Ford, was admitted, and that the defendants' own medical expert was of the opinion that Mary Jo was injured in the accident, and that she was permanently impaired. The motion for a new trial was denied.
On appeal, appellants assert as error the trial court's denial of their motion for a new trial. They further urge as error the admission, over objection, of testimony by the defendants' medical expert, Dr. Rutledge, that a substantial cause of Mary Jo's pain and physical impairment was the inappropriate treatment provided by her treating physician, Dr. Flynn, particularly the surgical procedure known as a percutaneous diskectomy, and disc fusion surgery. Appellants further urge that the court erred in refusing to grant appellants' motion for mistrial based upon the admission of prejudicial testimony given by Dr. Rutledge after the trial court sustained an objection to questions regarding his opinion as to the inappropriateness of Dr. Flynn's treatment. Finally, appellants urge that the trial court reversibly erred in refusing their request for a special jury instruction advising the jury that the original tortfeasor is liable for damages caused by subsequent improper medical treatment which aggravates or increases the original injury.
We first address the issue of the improperly admitted medical evidence. Dr. Rutledge, the defense witness, testified that in his opinion the accident of April 20, 1986 aggravated Mary Jo's preexisting condition and caused her pain to begin.[1] Following that statement, he was asked to elaborate upon what type of treatment he would have recommended *161 had he seen Mary Jo initially. The doctor related that he would have instructed her in exercises, and may well have ordered some physical therapy. She would also have been counseled, and probably would have been given medication of several different varieties. Then she would have been monitored with the expectation of slow improvement. He stated that it is very common for patients with preexisting degenerative disc disease to have symptoms that last for months or even longer after an episode of the type she experienced, and he would try to let the patient know what was expected, and that the condition would eventually get better and subside. However, if the patient failed to respond to that course of care over a reasonable period of time, maybe two or three months, then further studies might be ordered, such as the studies Dr. Flynn ordered.
Rutledge was then asked whether, based upon his diagnosis, he had formed an opinion as to whether it was reasonable and necessary in January of 1987 to do a percutaneous diskectomy. Upon objection by appellants' counsel, there followed a bench conference in which the court and counsel discussed, among other things, this court's recent ruling in Davidson v. Gaillard, 584 So.2d 71 (Fla. 1st DCA), rev. denied, 591 So.2d 181 (Fla. 1991), regarding the rule that an original tortfeasor remains liable for subsequent medical malpractice of a treating physician, so long as the treatment is related to the conditions caused by the original wrong. Appellees' counsel argued to the court that appellees had no intention of contending that Mary Jo was injured as a result of malpractice by Dr. Flynn, but that appellees were entitled to provide evidence from which the jury would be able to assess what was reasonable and necessary treatment, so that the jury could decide what should be paid, or not paid, to Mrs. Dungan, as covered by the standard jury instructions concerning the award of reasonable and necessary medical costs and treatment. The trial judge responded, we think correctly, that although experts are permitted to disagree with opinions reached by other experts, a lay person is entitled to reasonably rely on the judgment of a licensed expert and should not be required to do some independent investigation beyond that. After further discussion, in which appellees' counsel attempted to distinguish the present situation from the usual rule, in that Mary Jo was referred to Dr. Flynn by her attorney, the court ruled that it would be proper to ask Dr. Rutledge whether he agreed with certain conclusions of Dr. Flynn so far as his diagnosis was concerned, but it would be impermissible to inquire of Dr. Rutledge whether or not in his opinion the surgery was reasonable or necessary. Appellees' counsel was then permitted to proffer the testimony of Dr. Rutledge that, in his opinion, both the percutaneous diskectomy in January 1987 and the two level fusion operation in January 1989 were not reasonable and necessary. Following the proffer, the trial court ruled that counsel would be permitted to ask Dr. Rutledge whether or not his opinions differed from Dr. Flynn's, but that counsel would not be permitted "to launch a direct broadside attack into what Dr. Flynn did."[2]
After the proffer and the trial court's ruling, direct examination of Dr. Rutledge continued. He was immediately asked to assume that Dr. Flynn had the opinion that the percutaneous diskectomy was appropriate to do, and whether he had an opinion that this surgery was appropriate or whether he differed with Dr. Flynn's opinion. Appellants' objection to the question was overruled. Dr. Rutledge thereafter testified that he differed with Dr. Flynn's opinion, and then elaborated at length upon why he was of the view that the surgery was not appropriate, his reason being, essentially, that Mary Jo did not have the hard physical findings that go along with the ruptured disc or a radiographically-proven ruptured disc that was pressing on the nerve root, and for this reason, he felt that it was not reasonable to do the surgery. Upon further objection by appellants' counsel, the trial court instructed the jury to disregard *162 Dr. Rutledge's statement with respect to whether the surgery was reasonable or not. Appellants' motion for a mistrial was denied.
Notwithstanding the trial court's rulings, appellees' counsel continued with examination of Dr. Rutledge, eliciting from him further testimony regarding his disagreement with Dr. Flynn as to whether the operation should have been performed. During the course of his testimony he pointed out that after her fusion surgery, Mary Jo had complaints of pain in her left lower extremity, whereas previously her pain had been of the right lower extremity. He pointed out that the pain in the left lower extremity had not been present before her two-level fusion in January of 1989, and that in his opinion, it was not appropriate to do that surgery. He further elaborated upon the inappropriateness of the percutaneous diskectomy by pointing out that her x-rays, as interpreted by a radiologist, suggested that the problem with Mary Jo's disc was at the front or anterior portion, rather than at the back, or posterior portion, and that the percutaneous diskectomy would relieve pressure at the back, rather than at the front where the problem resided.
Appellants' counsel again objected to the line of questioning of Dr. Rutledge because it amounted to a claim that Dr. Flynn committed malpractice. The court allowed questioning of Dr. Rutledge to continue, whereupon the doctor stated that he had an opinion that in October 1991 Mary Jo had substantial impairment which was caused by three things: her preexisting lumbar degenerative disc disease; the injury that she sustained; and the subsequent treatment that she underwent. The doctor gave her a 25% permanent anatomic impairment, based upon the Social Security Disability Administration ratings for patients who have been through multiple back procedures up to and including a fusion, "and have been rendered impaired as a result of that."
From the foregoing, it is clear that the jury was informed by appellees' expert medical witness that Mary Jo's permanent impairment was the result of inappropriate surgery. It is also clear from the arguments and discussions between the court and counsel, that the purpose and effect of this testimony was not, as appellees' urge, directed to the reasonableness of the cost of Mary Jo's medical treatment, but instead, to prove that Mary Jo's pain, disability and physical impairment was caused by her inappropriate surgery, rather than her injuries received in the accident.
It is well-established that a wrongdoer is liable for the ultimate negligence on the part of a physician who has treated an injury in such a way that the treatment may have increased the damage which otherwise would have followed from the original wrong. Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977); Davidson v. Gaillard, supra; Rucks v. Pushman, 541 So.2d 673 (Fla. 5th DCA), rev. denied, 549 So.2d 1014 (Fla. 1989); 57 Am.Jur.2d Negligence § 149, and Restatement (Second) of Torts § 457 (1965). Cf. Barrios v. Darrach, 629 So.2d 211 (Fla. 3d DCA 1993).
Appellees do not disagree with the foregoing rule of law. Instead, they contend, among other things, that appellants' counsel in his opening statement to the jury injected into the trial the issue of whether or not Mary Jo Dungan should have had any surgery performed on her back. They also contend that appellants' "opened the door" to this line of inquiry by their question to the operating physician, Dr. Flynn, regarding whether the surgeries he performed on Mary Jo Dungan were reasonable and necessary. They also refer to plaintiffs' request for the standard jury instruction which instructs the jury to award the reasonable value or expense of hospitalization, medical and nursing care and treatment "necessarily or reasonably obtained" by the plaintiffs.[3]
We have examined the opening statements made by both counsel to the jury, and have considered appellees' contention that counsel's remarks, as well as their request for the jury instruction on "reasonable or necessary" medical expenses justified the trial court's allowance of extensive testimony by Dr. Rutledge concerning the impropriety of Dr. *163 Flynn's treatment. We do not find these arguments well taken. In opening statement, it is true that appellants' counsel stated to the jury that the defense had taken the position not that Mary Jo Dungan was not injured, but that her injuries were not their responsibility. Further, counsel remarked to the jury that if the defense continued saying what they had been saying in the past, that they were going to say that Mary Jo Dungan should not have had any surgery at all, or that if she did have the surgery, she should not have had it done by Dr. Flynn. In defense counsel's opening statement, the jury was told that not only was Dr. Flynn's initial treatment incorrect, but that within less than one year after the accident he did a new, "controversial procedure," namely, the percutaneous diskectomy. Defense counsel further told the jury in opening statement that Dr. Rutledge was most surprised that Dr. Flynn had done any type of surgery, and was alarmed when he learned that Dr. Flynn was prepared to do a second surgery; further, that although Dr. Flynn stated that she had significantly improved, she now as a result of this second surgery has problems with her left leg which she did not have before.
We think it can be fairly stated, from a review of the entire record, that appellees' contention that their inquiry regarding Mary Jo's surgeries was properly directed to the issue of the reasonable sums to be awarded for her medical expenses is somewhat disingenuous, under the circumstances. Our review of Standard Civil Jury Instruction 6.2(c), and the cases construing the same satisfies us that the "necessarily or reasonably obtained" language used in the instruction relates simply to (1) whether the charges are for treatment the plaintiff sought for injuries at issue in a lawsuit, as opposed to treatment for some other condition, and (2) whether the charges are for a reasonable amount. Because the cases indicate that "reasonableness or necessity" can be established by lay testimony, it must involve a question of necessity from the perspective of the injured party, rather than from the perspective of a medical expert. See, Garrett v. Morris Kirschman & Co., 336 So.2d 566 (Fla. 1976), and Albertson's, Inc. v. Brady, 475 So.2d 986 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986).
Even if it be assumed that the complained of testimony of Dr. Rutledge could be justified, for whatever reason, we find that appellees have presented no rational argument, nor do we believe that one can be made, to justify the trial court's denial of appellants' request for a special jury instruction dealing with a tortfeasor's liability for the aggravation or increase of injuries caused by subsequent medical treatment secured by the injured party.
Appellants requested, and the court denied, proposed Jury Instruction No. 9, which reads as follows:
Where one who has suffered personal injuries as a result of the negligence of another seeks medical treatment from a physician or surgeon, and the injured person's injuries are thereafter aggravated or increased by the negligence, mistake or lack of skill of such physician or surgeon or the poor results of such treatment, the law regards the negligence of the one causing the original injury as the proximate cause of the damages flowing from the later negligent, unskillful, or unsuccessful treatment of the physician or surgeon.
Appellees do not seriously contend that the requested instruction does not correctly state the law. Rather, they assert that appellants were not entitled to the instruction because they did not plead or contend at any stage of the proceedings that Dr. Flynn was negligent in his care and treatment of Mary Jo Dungan. We find this argument also rather disingenuous. Of course appellants did not contend that Dr. Flynn was negligent, or that his treatment amounted to malpractice. Rather, it was the appellees who raised a "broadside attack" upon the treatment rendered by Dr. Flynn despite the trial court's admonition, unfortunately not strictly adhered to, that such an attack would not be permitted. In other words, the trial court allowed a malpractice claim to be tried within the original tort claim, in direct contravention of the trial court's earlier declaration that such would be improper.
*164 We are of the view that the testimony of Dr. Rutledge clearly focused upon Dr. Flynn's lack of skill or judgment, and upon the poor results achieved by his treatment. The admission of this testimony, coupled with the denial of the special instruction informing the jury as to how to deal with this aspect of the case, was reversible error.
Furthermore, despite the existence of certain aspects of the case that might understandably tend to sway a jury against Mary Jo Dungan,[4] we think a new trial is required. It is significant to note that, although liability was denied in appellees' answer to the complaint, at trial the defendants admitted that the driver of the truck, Travis Griffin Ford, was negligent in causing the accident. The trial court so instructed the jury. Although a jury could reasonably have found that notwithstanding the negligence on the part of the defendant driver, Mary Jo Dungan received no significant injury or permanent physical impairment as a result of the accident, appellants were entitled to have this issue tried before the jury under the correct rules of evidence and instructions. Since the medical evidence presented by both sides unequivocally established Mary Jo Dungan's permanent impairment, the issue of causation became critical. We think it is highly unlikely that the jury disregarded all the medical evidence, or that they reasonably could have done so, although, as appellees argue, the standard jury instructions allow them to do just that. As the case was tried, the jury was presented with the choice of whether Mary Jo Dungan's pain and physical impairment was attributable to her accident, or to the improper treatment rendered by Dr. Flynn. Thus, the jury was improperly allowed to consider and base their verdict on whether Dr. Flynn's treatment was improper.[5]
In view of our resolution of this appeal based upon the issues already discussed, we find it unnecessary to address appellants' additional points on appeal. We also affirm, without discussion, the cross-appeal filed by appellees.
REVERSED and REMANDED for new trial.
ALLEN and WOLF, JJ., concur.
NOTES
[1] There was no evidence that Mrs. Dungan's pre-existing condition was symptomatic prior to the accident, nor does it appear that her later symptoms and physical impairment were the result of a normal progression of her pre-existing condition.
[2] In explanation of his ruling, the court referred to section 703.3, Ehrhardt, Florida Evidence, to the effect that while it is improper for an expert to express an opinion upon the validity of another expert's opinion, an expert could be asked how his conclusions differ from another expert to show that the other expert failed to consider the proper factors.
[3] Florida Standard Civil Jury Instruction 6.2(c).
[4] We note, for example, the testimony of appellee Ford, the driver of the truck, that Mary Jo did not appear injured at the accident scene. Further, although Mary Jo was transported to the hospital with her daughter and mother-in-law, she did not seek treatment for herself, and on an insurance claim form subsequently filed, Mary Jo denied being injured in the accident. Also, surveillance films and other evidence was produced showing her engaged in various activities.
[5] Although not raised by appellees in their brief, we have considered whether the judgment is affirmable under the "two-issue" rule of Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1977), and its progeny. We conclude that it is not. We agree with the statement of the court in Brown v. Sims, 538 So.2d 901 (Fla. 3d DCA 1989), quashed in part, 574 So.2d 131 (Fla. 1991), that where there is an erroneous ruling on the admission of evidence, a judgment is sustainable under the two-issue rule only if the issue which the appellee relies upon as an alternative ground for affirmance is not also affected by the prejudicial evidentiary ruling. If the two-issue rule is otherwise applicable in support of a jury verdict under the circumstances presented here, an issue we have not been called upon to decide, we would not find it applicable in the instant case because the erroneously admitted evidence is such that it would clearly affect the jury's verdict under either of the alternative bases for denial of a verdict for Mary Jo Dungan.