828 So.2d 478 (2002)
Veronica L. ROBINSON and Stephanie V. Robinson, Appellants,
v.
David W. BUCCI, Appellee.
No. 2D01-3521.
District Court of Appeal of Florida, Second District.
October 18, 2002.
*479 Bonita Kneeland Brown of Fowler White Boggs Banker P.A., Tampa, for Appellant.
Catherine S. Bowles of Sardelis and Bowles, L.L.P., Sarasota, for Appellee.
NORTHCUTT, Judge.
In David Bucci's motor vehicle negligence suit against Veronica Robinson and her mother, Stephanie Robinson, the jury returned a $10,000 verdict that apportioned ten percent of the negligence to the Robinsons and ninety percent to Bucci. The jury also determined that Bucci suffered no permanent injury as a result of the accident. The trial court granted Bucci's motion for new trial on the grounds that the jury's award was against the manifest weight of the evidence and that Bucci had been prejudiced by improper testimony regarding his reputation for truthfulness. We reverse.
While driving her mother's car in September 1998, Veronica Robinson collided with Bucci when her power brakes and steering allegedly failed during a turn. Bucci testified that he was driving at about fifteen to seventeen miles per hour and he estimated that Robinson's vehicle was traveling at twenty miles per hour. Bucci, who was not wearing a seatbelt, hit his head on the windshield. Following the accident he complained of neck, leg, and ankle pain.
In January 1999 Bucci consulted a neurosurgeon, who recommended surgery. Bucci obtained a second opinion from Dr. Thomas Sweeney, an orthopedic surgeon, who opined that Bucci had suffered injuries to cervical discs as a result of the accident. Dr. Sweeney performed a surgical fusion of Bucci's cervical vertebrae, for which Bucci incurred medical bills of *480 $74,583. The surgery eliminated Bucci's arm pain, but three months after the surgery he still suffered neck pain. The vertebrae had not fused, and Dr. Sweeney believed Bucci would need a second, corrective operation at a cost of $60,000. Dr. Sweeney testified that Bucci had not complied with the post-surgical treatment protocol, which prescribed physical therapy and the use of a cervical collar. He agreed that such failures could cause a bone graft fusion to fail.
At trial Bucci admitted that within a month after the accident his arm complaints were probably completely gone. He also acknowledged that he had received medical treatment for neck, back, shoulder, arm, and other ailments following two accidents in 1987 and 1993. During a deposition he testified that he had suffered a permanent neck injury in the 1993 accident, but at trial he denied any recollection of this statement. Bucci had failed to disclose his prior neck and back problems when he sought treatment following his accident with Veronica Robinson.
The Robinsons' expert medical witness, a neurosurgeon named Stephen Padar, testified that he examined Bucci and reviewed his medical records. When reviewing Bucci's cervical MRI taken shortly after the accident, Dr. Padar observed typical age-related degeneration, but he saw no evidence of a trauma-related injury. In Dr. Padar's opinion, Bucci did not sustain a permanent injury in the accident. Rather, he concluded that Bucci suffered only a sprained neck that resolved within six weeks or so.
On the last day of trial, Bucci's counsel requested a jury instruction based on Dungan v. Ford, 632 So.2d 159, 163 (Fla. 1st DCA 1994), contending that Dr. Padar's testimony implied malpractice. Because Bucci underwent surgery on Dr. Sweeney's advice, his counsel argued that the court should instruct the jury to assess the reasonableness of the treatment from Bucci's viewpoint, not the medical experts'. The trial court agreed to give the following jury instruction:
When determining the reasonableness or necessity of medical treatment which has been established by medical testimony, it should be analyzed from the perspective of the injured party rather than from the perspective of the medical experts.
The other area of contention concerned the testimony of Sarasota County Sheriff's Deputy Peter Augello, one of Bucci's neighbors, who testified for the Robinsons. Augello had spoken with three or four other neighbors about Bucci's truthfulness. Defense counsel asked Augello to describe Bucci's reputation for truthfulness in the community. Bucci's counsel objected, after which Augello interjected: "I don't consider him truthful."
Defense counsel requested a bench conference at which the trial court recognized that Augello had not given a proper response to the question and had improperly asserted his personal opinion of Bucci's veracity. The court invited the parties to suggest a curative instruction. Bucci's counsel hesitated at this, positing that a curative instruction might draw more attention to the testimony. Instead, counsel moved for a mistrial due to the prejudicial effect of the remark and to the fact that Deputy Augello, who was on duty that day, wore his uniform when testifying. The court reserved ruling on the motion. Bucci's counsel then cross-examined Augello, eliciting testimony that he had no personal opinion of Bucci. Also, Augello acknowledged that on a prior occasion he had accidentally run over and killed Bucci's dog. Bucci had demanded that Augello take the dog to a veterinarian, but Augello had refused. Later, Bucci telephoned Augello's boss and complained.
*481 At that point, the court revisited Bucci's motion for mistrial. Expressing concern that the jury could be unduly influenced by the fact that Augello was a sheriff's deputy who obviously had some issues with Bucci, the court advised that it was close to declaring a mistrial. The court asked Bucci's counsel if she truly wanted one. Counsel discussed the matter with her client, then announced that because of the time and expense invested in the trial, she was withdrawing the motion for mistrial. She asked, instead, that the court exclude any further reputation testimony. The court agreed.
After the jury returned its verdict as previously described, Bucci filed a motion for new trial. When granting the motion the trial court found that the $10,000 verdict was against the manifest weight of the evidence. The court observed that "[t]here was no testimony that the amount of the medical bills was unreasonable. The jury must have disregarded the Court's instruction to them regarding the fact that the reasonableness or necessity of the medical treatment should be analyzed from the Plaintiff's perspective." The court also held that Deputy Augello's testimony necessitated a new trial for two reasons. First, the court was no longer satisfied that Augello's conversations with several neighbors was a sufficient foundation for testimony about Bucci's reputation for truthfulness in the community. Second, the court concluded that Augello's improper injection of his personal opinion that Bucci was not truthful fundamentally tainted the verdict and warranted a new trial notwithstanding that Bucci had withdrawn his motion for mistrial.
When reviewing an order granting a new trial, we must affirm unless we find that the trial court abused its discretion. Brown v. Estate of Stuckey, 749 So.2d 490, 495 (Fla.1999). We conclude that the trial court did so in this case.
Assuming, without having to decide, that the jury instruction drawn from Dungan, 632 So.2d 159, was proper, the jury's damage award was not against the manifest weight of the evidence. It is important to note that the trial court found to the contrary solely because it believed the verdict was inconsistent with the Dungan instruction. But whereas the Dungan instruction addressed the reasonableness and necessity of treatment, the Robinsons challenged Bucci's claim that he suffered a permanent injury as a result of the accident. Dr. Padar testified that the accident did not cause Bucci to suffer anything beyond a sprained neck. Therefore, the jury's determinations that Bucci did not suffer a permanent injury as a result of the accident and that his damages resulting from the accident were only $10,000 were supported by the evidence, and they were not inconsistent with the Dungan instruction. See Cameron v. Sconiers, 393 So.2d 11 (Fla. 5th DCA 1980). The jury is entitled to reject evidence of past medical expenses. Frei v. Alger, 655 So.2d 1215, 1216 (Fla. 4th DCA 1995). Where there is a dispute as to whether a plaintiff's injuries resulted from the accident, a verdict awarding the plaintiff only a portion of his damages does not require a new trial as a matter of law. Beauvais v. Edell, 760 So.2d 262, 264 (Fla. 4th DCA 2000), review denied, 780 So.2d 912 (Fla.2001).
Neither did Augello's testimony justify granting a new trial. Whether there was an adequate foundation for his testimony about Bucci's reputation for truthfulness was a moot issue because he never actually gave such testimony. Although Augello was questioned on this topic, he was interrupted by objections and then by the bench conference following his unresponsive answer about his personal opinion of Bucci's veracity. Augello was not asked about this again.
*482 Finally, Bucci waived his right to a mistrial on the question of Augello's personal opinion of Bucci's truthfulness. See Saxon v. Chacon, 539 So.2d 11, 12 (Fla. 3d DCA 1989). The concept of fundamental error affords relief for error that has not been preserved. In this instance, however, Bucci's counsel preserved the error, then expressly withdrew her objection and motion for mistrial. Thus, Bucci took a calculated risk by inviting the court to proceed with the trial even though it had been tainted. "[H]aving gambled and lost when the jury returned an adverse verdict, he cannot now be heard to ask belatedly for a new trial based on the erroneous admission of the ... evidence." Id. at 12 (citations omitted).
For the foregoing reasons, we reverse the order granting a new trial and remand with directions to reinstate the jury's verdict and enter final judgment thereon.
BLUE, C.J., and SILBERMAN, J., Concur.