DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH BENJAMIN BLACK** and **ELIZABETH BLACK,**
Appellants,

v.

**MERY COHEN,**
Appellee.

No. 4D16-2485

[April 25, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE08-27555 (14).

Warren B. Kwavnick and Kelly Lenahan of Cooney Trybus Kwavnick Peets, PLC, Fort Lauderdale, for appellants.

Ramon Rubio of the Law Office of Ramon Rubio, P.L., Fort Lauderdale, for appellee.

WARNER, J.

In this appeal from an order granting a new trial in a rear end collision case, resulting in a small verdict for the plaintiff, the court determined that comments in voir dire regarding insurance, as well as testimony regarding the defendant's research in medical school, improperly swayed the jury. We conclude that an objection to the comment on insurance was not properly preserved and cannot serve as grounds for a new trial. The comment on the defendant's medical research amounted to admissible "humanizing" evidence. Even if it did not, given the lack of explanation of how such evidence created a "grossly inadequate" verdict, we conclude that the court abused its discretion in granting a new trial. We reverse for entry of a judgment consistent with the jury's verdict.

The appellee/plaintiff, Mery Cohen, filed suit against appellants/defendants, Joseph Black (driver) and Elizabeth Black (owner), alleging Black was negligent in causing an automobile collision in August 2007. The parties gave different versions of the accident. Cohen testified that she was stopped at a red light in a turn lane on University Drive in

Broward County when she was struck from behind by Black. Black, on the other hand, testified that he was also stopped for the light behind Cohen's vehicle when the light turned green and the vehicles started to move. Cohen slammed on her brakes, and Black hit the rear end of her vehicle. The collision was minor, causing only around $1,600 damage to Cohen's bumper. Some statements on Cohen's application for no-fault insurance benefits contradicted her testimony. The description of the accident on the form stated that the light had turned green, although at trial she denied making that statement.

Cohen, age fifty-three at the time of the accident, testified her neck went forward and back during the collision. She did not seek treatment that day, but she went to Broward Rehab Center for pain in her shoulders, neck (left and right), and lower back. She was seen by a neurologist who diagnosed her with cervical spine strain/sprain, ordered physical therapy, and prescribed medication. X-rays showed narrowing of the disc space at multiple levels of the cervical spine. X-rays of the lower back also showed widespread narrowing of the disc space throughout the lumbar spine. An MRI taken three months later showed bulging lumbar discs, causing some nerve impingement.

Cohen then was seen by an orthopedic surgeon who diagnosed her as having herniated discs in the lower back. He recommended a lumbar discogram. She also had an MRI of her cervical region, which revealed numerous herniated discs. Her surgeon then recommended a cervical discogram. Her pain from these impingements occurred on the left side of her neck.

Cohen underwent the discogram in January 2008, which eliminated her low back pain. In June 2008, her surgeon performed a discogram on her cervical spine. Post-operatively, she did well, and the procedure eliminated the pain on the left side of her neck. However, in October 2008, fourteen months after the accident, she returned to her orthopedist with complaints of right-sided neck pain. He treated her with an injection in the neck and pain medication. By November, he released her and advised that she should return only on an as needed basis. She did not return for further visits.

For nine months, Cohen saw no doctors. Then, in July 2009, she saw a series of orthopedists for right-sided neck pain. New MRIs of the neck were performed, and the orthopedist recommended a cervical fusion.

A year later, she saw Dr. Dare, an orthopedic surgeon, as she was still complaining of right-sided neck pain. After more tests, he performed a

cervical discectomy and fusion in October 2011, almost four years after the accident. Dr. Dare opined that the accident in August 2007 caused the disc herniation that ultimately led to the surgery that he performed. Cohen's medical bills totaled $240,000, particularly because Dr. Dare charged $176,000 for the fusion.

The defense offered the testimony of Dr. Rolando Garcia, an orthopedic spine surgeon, who examined Cohen and her medical records. He reviewed the x-rays of Cohen taken the day after the accident and did not find anything that he attributed to the accident. He stated that the thoracic and lumbar x-rays were normal. The cervical x-rays showed only arthritic or degenerative changes, including the levels where Dr. Dare eventually operated. Dr. Garcia testified that the left-sided neck pain resolved after the accident, and fourteen months after the accident, right-sided neck pain commenced. He did not conclude that the right-sided pain, which manifested itself fourteen months after the accident, was related to the accident. He opined that she did not suffer a permanent injury as a result of the accident, and the cervical fusion performed by Dr. Dare in 2011 was not necessitated by, nor attributed to, the accident.

In closing argument, Cohen's attorney argued that she had sustained an aggravation of a pre-existing condition and asked the jury to award $240,000 in past medical expenses and $40,000 for future office visits (no request for future surgery). Counsel requested a "floor" of $700,000 for past pain and suffering during the nine years since the accident and a minimum of $200,000 for future pain and suffering. Black contended that Cohen did not suffer a permanent injury in the accident. Her complaints of low back and left-sided neck pain were resolved within a year, and the right-sided pain was not related to her injuries in the accident. He suggested that the jury award $18,506 as compensation for the medical expenses incurred up until the time she was released by her physician in November 2008.

The jury concluded that Black was 50% at fault and Cohen was 50% at fault. It also concluded that Cohen's injuries were not permanent. It awarded $18,506 in past medical bills, and it did not award any non-economic damages.

Post-trial, Cohen moved for a new trial, alleging two primary grounds for a new trial. First, during voir dire, Cohen's counsel questioned the prospective jurors on whether any of them had "ever dealt with investigations of claims, auto accidents, worked for insurance companies, [or] done any kind of investigation stuff?" Black's counsel objected that, "This is not an insurance case." Cohen's counsel then said, "I agree, Your

Honor. I just want to know if they've worked for any kind of companies that do – whether it be a private investigator, insurance company, or whatever." The court did not rule on the motion for mistrial. In her motion for rehearing, Cohen argued that these comments biased the jury and made it appear that Black did not have insurance.

The second issue addressed in the motion for new trial occurred during the testimony of Black. During jury selection, the jurors were told that Black was absent, because he was a student at the University of Florida and making a presentation. He would arrive later. Subsequently, on the third day of trial, Black testified. He initially stated that he was a medical student and at the same time was doing research to receive a PhD at the University of Florida. He had completed the first two years of medical school; had taken his boards; and had an additional two years of graduate school doing research. Counsel then asked him what he was researching, to which Cohen objected based on relevance. The court overruled the objection, and Black testified that he was researching chemotherapy resistant prostate cancer and the mechanism of how it remains resistant to therapies. He was giving a presentation on his research when he was absent from trial. In the motion for new trial, Cohen maintained that the sole purpose of revealing his research was to sway the jurors to "feel" for Black and prejudice them in his favor.

The court held a hearing on the motion. Black contended that Cohen had waived her motion for mistrial as to the insurance comment, because the court offered, and the appellant accepted, a curative instruction which was read to the jury. Further, Black contended that counsel's statement was in response to Cohen's counsel interjecting insurance into the voir dire by asking questions regarding experience with insurance investigations. Black argued that, as to Black's research, these comments only served to humanize Black, which the trial court had allowed. The trial court suggested interviewing the jurors to determine whether either of these issues had influenced the verdict. The judge noted that the jury had not awarded all of Cohen's medical expenses. Black's counsel pointed out that the jury had awarded all the expenses for the first ten months after the accident, which was consistent with their expert's testimony as to the injuries which were caused by the accident. The court seemed intent on a jury interview and asked for memoranda as to its propriety. Black provided a substantial body of case law showing that a juror interview would be inappropriate, and Cohen agreed with that conclusion.

Without holding another hearing, the court entered an order granting a new trial. The court ruled:

4

1. The grossly insufficient award occurred because the jury was misled, confused, influenced by passion or prejudice by the testimony elicited by the Defendant. The defense was entitled to get some of the background for the defendant: he's a student in Gainesville at U of F, he's been there for seven years and probably that he's in medical school. Then the defense asked the classic one question too many to elicit non probative and prejudicial evidence: "What are you currently in the process of researching?" Before the answer, the Court overruled the Plaintiff's objection. The answer was "I'm looking at a type of prostate cancer that is resistant to current chemotherapy that's turned castration-resistant prostate cancer. And we are trying to understand different ulterior mechanisms that are responsible for how this giving cancer gains resistance to androgen deprivation therapy." That question and answer had no probative value in this case and was introduced simply to prejudice the jury in favor of the defendant who was trying find a new way to treat or cure prostate cancer. Not knowing the answer to the question, it was the Court's fatal mistake to overrule Plaintiff's objection to the question.

2. The grossly insufficient award occurred because the jury was misled and confused because the defense introduced the issue of insurance coverage for the defendant into the trial. The defense spin on the agreed to collateral source rule instruction to the jury implied the defendant did not have insurance and misled the jury into believing the defendant was going to personally pay the judgment.

Black now appeals the order granting the new trial.

**Standard of Review**

Three cases establish the standard of review of orders granting motions for new trial. In *Cloud v. Fallis*, 110 So. 2d 669, 673 (Fla. 1959), the court directed:

When the judge, who must be presumed to have drawn on his talents, his knowledge and his experience to keep the search for the truth in a proper channel, concludes that the verdict is against the manifest weight of the evidence, it is his duty to grant a new trial, and he should always do that if the jury has

5

been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record[ .]

Inasmuch as such motions are granted in the exercise of a sound, broad discretion the ruling should not be disturbed in the absence of a clear showing that it has been abused.

(citations omitted).

In *Brown v. Estate of Stuckey*, 749 So. 2d 490, 497-98 (Fla. 1999), the court again addressed the standard of review that appellate courts must apply:

When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion. The fact that there may be substantial, competent evidence in the record to support the jury verdict does not necessarily demonstrate that the trial judge abused his or her discretion.

. . . .

Regarding inadequate or excessive verdicts, this ground is a corollary of the ground asserting that the verdict is contrary to the manifest weight of the evidence. A new trial may be ordered on the grounds that the verdict is excessive or inadequate when (1) the verdict shocks the judicial conscience or (2) the jury has been unduly influenced by passion or prejudice. . . . Regardless of whether a new trial was ordered because the verdict was excessive or inadequate or was contrary to the manifest weight of the evidence, the appellate court must employ the reasonableness test to determine whether the trial judge abused his or her discretion.

Finally, in *Van v. Schmidt,* 122 So. 3d 243 (Fla. 2013), a case factually similar to this case, the court addressed a conflict between this court and the First District as to the deference the appellate court must afford the trial court in reviewing an order granting a new trial to the extent that the trial court relies on erroneous legal conclusions. The court held that deference is not required for legal conclusions, stating:

6

We conclude that a trial court's conclusions of law in an order granting a new trial are not entitled to deference because the trial court's superior vantage point is not implicated. In other words, a reviewing court can determine the legal issue just as well as the trial court. However, the trial court's findings of fact and determinations of credibility are still entitled to the same deference as in orders that are not premised, at least in part, on an error of law, because of the trial court's superior vantage point of having been present during the entire trial.

*Id.* at 258. With these principles in mind, we now analyze the new trial order in this case.

**This Case**

The trial court determined that the verdict was "grossly inadequate" because of the testimony with respect to Black's research and the reference to insurance. Taking the second reason first, the court found that the "defense" injection of insurance into the trial prejudiced the jury. Counsel's statement, "This is not an insurance case," occurred in voir dire, not during the trial itself. While Cohen moved for a mistrial, her counsel did not seek a ruling. The court offered a curative instruction, and counsel expressed satisfaction with it. Most importantly, Cohen never expressed dissatisfaction with the jury chosen and accepted the jury without reservation, thus failing to preserve this objection. The preservation of an objection is strictly a question of law and thus reviewable by the appellate court de novo. *See Van,* 122 So. 3d at 252. In a similar context, the Florida Supreme Court has held that a trial court may not grant a new trial based upon objections to attorney misconduct which were sustained, but for which no motion for mistrial was requested. The court noted, "The principles behind the contemporaneous objection rule apply equally to our decision regarding mistrial motions today: failure to alert the trial judge that an error may be incurable results in delay and wastes judicial resources, especially if the error complained of occurs early on in the proceedings." *Companioni v. City of Tampa,* 51 So. 3d 452, 455-56 (Fla. 2010). The same principles apply in this case. The court erred as a matter of law in premising the order granting new trial on this waived objection. *See also Robinson v. Bucci,* 828 So. 2d 478, 482 (Fla. 2d DCA 2002); *Publix Super Markets, Inc. v. Griffin,* 837 So. 2d 1139, 1141 (Fla. 2d DCA 2003); *Rodriguez v. Loxahatchee Groves Water Control Mgmt. Dist.,* 636 So. 2d 1348, 1350 (Fla. 4th DCA 1994) (finding a curative instruction sufficiently remedied error in inflammatory remarks so that it was not a proper basis for granting new trial).

7

The trial court also grounded the order granting new trial on the testimony by Black regarding his cancer research, which the trial court found was not probative and was offered only to prejudice the jury. Cohen did not allege, nor did the court find, that Black's testimony that he was a medical student two years away from graduating was inadmissible. In fact, earlier in the trial, the court found that this evidence was admissible as proper "humanizing" evidence. Black contends that his cancer research was likewise appropriate to humanize the witness and provide the jury with a basis to assess his credibility. *See Miller v. State*, 42 So. 3d 204, 224 (Fla. 2010) ("It is common practice on direct examination to inquire about a witness's occupation to establish background."). In the early parts of the trial, the court had even agreed that both parties could offer humanizing evidence. Black's counsel never mentioned Black's medical studies or cancer research again.[1] In *Miller*, a death penalty case, the defendant contended that the trial court erred in allowing the victim's son to testify that he was an attorney, as the information was irrelevant and prejudicial. *Id.* The supreme court rejected this contention, noting that the background does enhance credibility of a witness by humanizing him. *Id.* at 224-25. Moreover, "a jury is not presumed to discount all the evidence only to decide a case upon the fact that the victim's son is an attorney." *Id.* at 225. Similarly, in this case, the trial court cannot presume that the jury has disregarded all other evidence and decided this case in accordance with the position of Black simply because he does cancer research. As in *Miller,* the admission of the evidence was not error.

Even if we consider the ruling as being within the "broad discretion" afforded to trial courts in ruling on motions for new trial, we would still conclude that the court abused its discretion in ordering a new trial based upon the comments about Black's cancer research. We simply cannot conclude that mention of Black's cancer research was so prejudicial that the jury was misled and misperceived the weight of the evidence because of it and decided the case upon the fact that the defendant did cancer research. No reasonable person would conclude that the verdict was fatally tainted by this single remark.

We are not bound by any findings and credibility determinations, because the trial court made none. The court did not explain or analyze why the verdict was "grossly inadequate." The trial court made no analysis of the testimony of the witnesses. Implicit in its finding of gross

---

[1] The only comment on Black's qualifications came from Cohen's attorney who said in closing argument: "And Joseph Black was just up there. I mean, talk about an excellent witness. He's all coat and tie, a med student, very articulate. And he seemed like an incredible witness."

inadequacy must be a finding that no evidence supported the jury's finding of no permanency; however, without an analysis of the evidence in the case and how the trial court would have come to that conclusion, the trial court's decision cannot be sustained. On the record before us, the issue of liability and permanency were hotly contested, and the court has shed no light as to why the defense's evidence supporting its case should be rejected. Therefore, we conclude that the court abused its broad discretion in ordering a new trial.

For the foregoing reasons, we reverse the order granting new trial and remand for entry of final judgment based upon the jury's verdict.

*Reversed with instructions.*

MAY and DAMOORGIAN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

9