# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-0180
LT Case Nos. 2020-CA-16579
2020-CA-16581

_____

ECIO RODRIGUES,

    Appellant,

    v.

MATTHEW ANDERSON and
JOSHUA ANDERSON,

    Appellees.

_____

On appeal from the Circuit Court for Brevard County.
George W. Maxwell, III, Judge.

Warren B. Kwavnick, of The Law Office of Warren B. Kwavnick,
PLLC, Pembroke Pines, for Appellant.

Ryan P. Rudd, Ravin J. Sahadeo, and Eric S. Block, of Morgan &
Morgan, P.A., Orlando, and David L. Luck, of Morgan & Morgan,
P.A., Miami, for Appellees.

August 22, 2025

MacIver, J.

    Appellant, Ecio Rodrigues, challenges an order granting a new
trial to Appellees, Matthew Anderson and Joshua Anderson, based
on allegedly improper statements by defense counsel during trial

in the presence of the jury that the Andersons claim resulted in a verdict against the manifest weight of the evidence.

Rodrigues contends the trial court erred by granting a new trial, because the statements that the trial court found to be improper were truthful, proper, and innocuous, and the jury heard conflicting evidence about the Andersons' alleged injuries and could have found the injuries were unproven or discredited, as reflected by the verdict. We agree.

I.

This appeal stems from a March 2018 incident, when the vehicle Rodrigues was driving collided with the vehicle occupied by the Andersons. The Andersons filed separate lawsuits against Rodrigues claiming to have suffered permanent injuries to the neck and low back and mild traumatic brain injury, which lawsuits were consolidated for purposes of discovery and trial. Rodrigues was represented by counsel hired by his automobile insurance carrier. Rodrigues admitted fault but disputed causation, permanency, and damages.

Two relevant rulings in limine were made. First, the trial court entered a written order prohibiting during jury selection and trial the "inference or suggestion that an individual defendant would be required to pay a verdict, or that there is insurance coverage in this matter." Second, regarding Rodrigues's admission of negligence, the trial court ruled that the jury instructions should comport with Florida Standard Jury Instruction (Civil) 401.13(c), to read:

> Ecio Rodrigues was negligent. The issue for you to decide on Matthew Anderson's and Joshua Anderson's claims are what loss, injury or damage was legally caused by that negligence and to award compensation to Matthew Anderson and Joshua Anderson for any such loss, injury, or damage.

Over the course of the nine-day trial, the jury heard extensive and conflicting testimony about the Andersons' claimed injuries— disc herniations resulting in cervical-fusion surgeries, mild

traumatic brain injuries, and Matthew Anderson's carpal tunnel syndrome—from expert witnesses presented by both sides and from the Andersons themselves.

The comments that prompted the trial court to grant a new trial included statements made by both the trial court and defense counsel during voir dire identifying Rodrigues as "the defendant" and that defense counsel represented him. The trial court told the venire that the issues to be tried were causation and damages, which meant that "while the Defendant has admitted negligence, the Defendant disputes that the accident caused the injuries claimed and the damages resulting therefrom." Initially, those comments were unobjected to.

The objections began when defense counsel told the venire that Rodrigues "accepts that he was at fault for causing the accident, and he's not alleging at all that the Anderson brothers were in any way at fault." The Andersons' counsel claimed those comments, along with identifying Rodrigues as "the defendant," improperly suggested that Rodrigues would be individually liable on a verdict when there was insurance available. The trial court kept it under advisement and reserved ruling.

Throughout voir dire and trial, the Andersons' counsel continually objected to defense counsel referring to Rodrigues as the defendant or identifying him by name, claiming that violated the "black letter law" under *Hollenbeck v. Hooks*, 993 So. 2d 50 (Fla. 1st DCA 2008).

During voir dire, defense counsel questioned a venireperson who had indicated she was "a sympathetic person" as to whether she could set aside sympathy for the Andersons which might cause Rodrigues to "at least start off half a step behind." The venireperson said she "would also have sympathy for Mr. Rodrigues because of what he's going through . . . . [p]lus the gentlemen who were injured." The Andersons' counsel renewed its objection and motion for a mistrial under *Hollenbeck* and that the

3

venireperson "just made my point that she feels sorry for the Defendant for what he's going through."[1]

During testimony from the first witness, the trial court revisited the objections and still could not determine that the comments were improper. At that point, the Andersons' counsel asked the trial court to reserve ruling until the verdict came back, relying on *Ed Ricke & Sons, Inc. v. Green By & Through Swan*, 468 So. 2d 908, 910 (Fla. 1985) ("We now explicitly hold that the trial court has the power to wait until the jury returns its verdict before ruling on a motion for a mistrial."). The Andersons' counsel argued that if they got an acceptable verdict, it would be "water under the bridge," but if not then their motion for a mistrial was preserved and they would be entitled to a new trial, "which we would get anyway."

Defense counsel responded that the challenged comments were not improper so there was no reason to strike the panel or grant a mistrial. Further, because they were at the beginning of the trial and had "not yet finished one witness," if the court were inclined to grant a mistrial it should do so at that time and not increase the parties' expenses. The trial court kept the matter under advisement, saying, "the bell hasn't rung in my head."

Later, when defense counsel asked Joshua Anderson whether he understood that Rodrigues admitted fault for causing the accident, the Andersons' counsel objected, claiming defense counsel was "trying to get credit that he's admitted fault." The Andersons again moved for a mistrial, but the trial court continued to reserve.

In closing, the Andersons' counsel requested over $13 million for Joshua Anderson and over $15 million for Matthew Anderson for past and future permanent injuries and non-economic damages. Defense counsel requested $45,499.62 for Joshua Anderson and $17,988.34 for Matthew Anderson for past medical expenses based on temporary injuries that should have resolved within fourteen weeks.

---

[1] The subject venireperson was not selected for the jury panel.

4

The jury agreed with the defense and awarded past medical expenses to the Andersons in the amounts requested by the defense. The jury did not award future medical expenses and, finding that neither of the Andersons sustained a permanent injury, awarded no non-economic damages.

Post-verdict, the Andersons moved for a new trial based in part on defense counsel's "repeated violations of *Hollenbeck*" by referring to Rodrigues as the defendant, by referring to defense counsel as representing him, and by referring to Rodrigues's admission of negligence. The Andersons argued that because of those violations, the jury verdict was against the manifest weight of the evidence.

After a hearing, the trial court orally announced its ruling granting a new trial and directed the Andersons' counsel to prepare a draft order.

The Andersons' counsel submitted a proposed order, to which Rodrigues objected, arguing that it deviated from the oral ruling. The trial court entered the Andersons' proposed order verbatim. This appeal followed.

## II.

"When ruling on a motion for new trial, the trial court has broad discretion. . . . [and] 'appellate courts traditionally defer to the superior vantage point enjoyed by the trial court.'" *State Farm Mut. Auto. Ins. Co. v. Matthews*, 377 So. 3d 1235, 1237 (Fla. 5th DCA 2024) (quoting *Olsen v. Philip Morris USA, Inc.*, 343 So. 3d 172, 174 (Fla. 3d DCA 2022)). "Although it has been occasionally said that a stronger showing of error is required to reverse an order granting a new trial than to reverse an order denying a new trial, abuse of discretion remains the standard of review for both orders." *Bachman v. Oliveros*, 293 So. 3d 555, 560 (Fla. 5th DCA 2020). While a trial court's discretion is broad, "it is not unbridled." *City of Gainesville v. Rodgers*, 377 So. 3d 626, 631 (Fla. 1st DCA 2023) (quoting *Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309, 1314 (Fla. 1986)).

## A. The Challenged Comments

The Andersons contend that Rodrigues's counsel's comments warranted the new trial under *Hollenbeck*, because Rodrigues claimed credit for admitting negligence and suggested that he would be solely responsible for a verdict. But the Andersons have simply misconstrued *Hollenbeck*.

In *Hollenbeck*, defense counsel—who had been retained by the defendant's insurer—advised the voir dire panel, "I'm a consumer justice attorney, and I represent John Hooks, a merchant marine, not some fancy company, not some conglomerate." *Id.* When the trial court required counsel to explain the definition of a "consumer justice attorney," counsel replied that he "represented a 'client who is a consumer and who is here for justice,' and explained that his statement should be considered in the context of [Hollenbeck's] voir dire questions regarding large verdicts and whether the venire believed in 'caps.'" *Id.* The trial court denied Hollenbeck's motion for mistrial based on the statement. *Id.*

In reversing and remanding for a new trial, the First District held that defense counsel's "misleading statement implied that an award of damages would be paid solely by the individual and was nothing less than an appeal to the jury to protect that individual from a harmful verdict." *Id.* at 51. "[I]t is not appropriate to appeal to a jury's sympathy; appeals to sympathy and attempts to inject a party's wealth, or lack thereof, are improper." *Id.* (citing *Batlemento v. Dove Fountain, Inc.*, 593 So. 2d 234, 242 (Fla. 5th DCA 1991); *Seaboard Air Line Ry. v. Smith*, 43 So. 235 (Fla. 1907)).

The *Hollenbeck* court did not preclude defense counsel from referring to their client as the defendant or identifying them by name, and none of the five cases that have cited *Hollenbeck* since 2008 has done so either.[2] Here, defense counsel did not misrepresent Rodrigues's status to the jury, as in *Hollenbeck*.

---

[2] *See Chin v. Caiaffa*, 42 So. 3d 300, 308 (Fla. 3d DCA 2010); *Samuels v. Torres*, 29 So. 3d 1193, 1196–97 (Fla. 5th DCA 2010); *Cascanet v. Allen*, 83 So. 3d 759 (Fla. 5th DCA 2011); *Linzy v. Rayburn*, 58 So. 3d 424, 426–27 (Fla. 1st DCA 2011).

There was no inappropriate mention of insurance or the financial circumstances of Rodrigues.

Nor did the trial court overlook the impugned statements but was attentive to the trial and the effect of the statements. After the panel was selected, when the Andersons' counsel renewed its objection, the trial court compared the words used by Rodrigues's counsel to those used by defense counsel in *Hollenbeck*, saying that the *Hollenbeck* words were "fighting words or, you know, and they are egregious," but Rodrigues's counsel's words were "softer."

Also, throughout voir dire, both counsel and the trial court repeatedly questioned the venire, individually and collectively, whether there was anything heard so far that would lead them to believe they could not be a fair and impartial juror. One prospective juror answered in the affirmative—not that he had heard anything, but he had seen a lawyer "smirk" and one of the plaintiffs chewing gum, which he felt was disrespectful—and he was released from jury duty.

Thereafter, in open court, the Andersons' counsel asked again, "[I]s there anything else from anybody that leads you to believe you cannot be a fair or impartial juror for each side? Anything else whatsoever that you think you need to disclose to us why you can't treat both sides fairly at the outset of the case before you've heard any evidence?" to which the venire responded, "No."

Finally, the trial court did not enter a thorough order explaining its rulings. Instead, it adopted the short order submitted by the Andersons that did not accurately reflect what was pronounced.

## III.

### B. The Verdict

Whether the verdict is contrary to the manifest weight of the evidence is a question addressed to the trial court on motion for a new trial, not a question presented to an appellate court. *Bachman*, 293 So. 3d at 560. Rather, an appellate court is limited

to considering whether the trial court abused its discretion in granting or denying a new trial. *Id.*

A trial court may grant a new trial on manifest weight grounds even if some evidence might support the verdict. But the deference given a trial court on this issue does not grant it a license to operate "as a super-juror by disregarding a jury's verdict simply because the judge would have rendered a different one had it been the judge's choice to make." *Valenty v. Saraiva*, 292 So. 3d 50, 54 (Fla. 2d DCA 2020) (quoting *Meyers v. Shontz*, 251 So. 3d 992, 999 (Fla. 2d DCA 2018)). "Rather, the trial court's role is to assess the totality of the evidence presented at trial and intervene only when that evidence is manifestly weighted to the movant's side." *Id.*

It is well-settled that if there is conflicting evidence or if different reasonable inferences can be drawn from the evidence, then the question is factual and is properly submitted to the jury for resolution. *See, e.g.*, *Miami-Dade County v. Berastain*, 388 So. 3d 886 (Fla. 3d DCA 2023). When the evidence or testimony is in conflict, the weight to be given that evidence is within the province of the jury, and it is up to the jury to make credibility determinations. *Miami-Dade County v. Davis*, 307 So. 3d 883, 890 (Fla. 3d DCA 2020). "A verdict is contrary to the weight of evidence only when the evidence is clear, obvious, and not conflicting." *Bachman*, 293 So. 3d at 560 (citing *DeWitt v. Maruhachi Ceramics of Am., Inc.*, 770 So. 2d 709, 711 (Fla. 5th DCA 2000)). But a "verdict is generally *not* against the manifest weight of the evidence if the record shows conflicting testimony from two or more witnesses." *Id.* (emphasis added) (quoting *Lindon v. Dalton Hotel Corp.*, 113 So. 3d 985, 987 (Fla. 5th DCA 2013)).

A new trial may be ordered on this ground only if the verdict shocks the judicial conscience or the jury has been unduly influenced by passion or prejudice. *See Brown v. Est. of Stuckey*, 749 So. 2d 490, 498 (Fla. 1999). If a trial court grants a new trial on this ground, "the trial court must state its reasons with specificity in a written order so that its decision can be effectively reviewed on appeal." *Valenty*, 292 So. 3d at 54 (citing Fla. R. Civ. P. 1.530(f); *Prime Motor Inns, Inc. v. Waltman*, 480 So. 2d 88, 89–90 (Fla. 1985)).

Here, both parties presented significant conflicting evidence over the course of the nine-day trial as to the Andersons' claimed injuries. There was ample evidence in the record from which a jury could have reasonably concluded that the Andersons' injuries were caused by preexisting conditions rather than by the accident. In ruling that the jury's verdict was against the manifest weight of the evidence, the trial court ignored the conflicting testimony about whether Rodrigues's negligence was the cause of the Andersons' injuries.

Further, no specific reasons were pronounced at the hearing on the motion for new trial as to why the verdict was against the manifest weight of the evidence. In fact, the trial court said that it was *not* shocked by the verdict:

> And the overview I have is that to some degree, my conscience was shocked, **not so much by the verdict** but by the number of things that went on in this case. And I feel that having reviewed *Robinson* and everything else, I think the manifest weight of the evidence in this case was clearly ignored by the jury.

(emphasis added). The trial court was referring to *Robinson v. Bucci*, 828 So. 2d 478 (Fla. 2d DCA 2002), a case relied on by Rodrigues in arguing against a new trial. There, Robinson, the plaintiff in a car accident case, underwent a cervical fusion surgery costing about $75,000. *Id.* at 479–80. The defense expert testified that the plaintiff suffered only a sprained neck that resolved within about six weeks. *Id.* The jury returned a gross damages award of $10,000, and the trial court granted a new trial finding that the verdict was against the manifest weight of the evidence. *Id.* The Second District reversed, holding: "Where there is a dispute as to whether a plaintiff's injuries resulted from the accident, a verdict awarding the plaintiff only a portion of his damages does not require a new trial as a matter of law." *Id.* at 481 (citing *Beauvais v. Edell*, 760 So. 2d 262, 264 (Fla. 4th DCA 2000)). *Robinson* supports denial of a new trial here.

The trial court's written order—which was prepared by the Andersons' counsel and does not accurately reflect the trial court's findings—not only lacks specificity but also does not say that the

9

court's conscience was shocked by the verdict. In a similar case, our sister court said:

> We are not bound by any findings and credibility determinations, because the trial court made none. The court did not explain or analyze why the verdict was "grossly inadequate." The trial court made no analysis of the testimony of the witnesses. Implicit in its finding of gross inadequacy must be a finding that no evidence supported the jury's finding of no permanency; however, without an analysis of the evidence in the case and how the trial court would have come to that conclusion, the trial court's decision cannot be sustained. On the record before us, the issue of liability and permanency were hotly contested, and the court has shed no light as to why the defense's evidence supporting its case should be rejected. Therefore, we conclude that the court abused its broad discretion in ordering a new trial.

*Black v. Cohen*, 246 So. 3d 379, 385 (Fla. 4th DCA 2018).

Here, nothing in the trial court's oral pronouncement or written order sheds any light as to why Rodrigues's evidence should be rejected. We cannot conclude that the impugned comments were "so prejudicial that the jury was misled and misperceived the weight of the evidence" because of them, and "[n]o reasonable person would conclude that the verdict was fatally tainted" by the comments. *See id.*

For all these reasons, the trial court abused its discretion by finding that the jury's verdict was against the manifest weight of the evidence. *See Smith v. Lyles*, 364 So. 3d 1123, 1130 (Fla. 6th DCA 2023) ("In sum, in ruling that the jury's verdict was against the manifest weight of the evidence, the trial court ignored conflicting testimony as to whether Smith was negligent and as to the cause of Lyles' injuries. For this reason, the trial court abused its discretion by finding that the jury's verdict was against the manifest weight of the evidence.").

## IV.

Because the reasons for granting a new trial are not supported by the record, we hold it was an abuse of discretion to grant a new trial. Accordingly, we reverse the order granting a new trial and remand this case to the trial court with instructions to enter judgment in accordance with the jury's verdict.

REVERSED and REMANDED with instructions.

LAMBERT and HARRIS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

11